812 F.2d 682
 PEOPLES NATIONAL BANK OF HUNTSVILLE, ALABAMA, a corporation,
as trustee of the Commercial Fishermen and Fish
Vendors of the Wheeler Reservoir Trust
Fund, Plaintiffs/Counterclaim
Defendants-Appellees,
v.
Dwight MEREDITH, Defendant/Counterclaim Plaintiff-Appellant,
v.
TVA, etc., et al., Counterclaim Defendants.
James E. CLOUD, Howard Jacobs, Floyd Bivens, Dwight
Meredith, Elmer Lee Roberts, George Towles,
Charles E. Goad and Steven Youngblood,
Plaintiffs/Counterclaim
Defendants-Appellants,
v.
Hammond HENDERSON, et al., Plaintiffs,
v.
TVA, etc., et al., Defendants,
Peoples National Bank of Huntsville, Alabama, its successors
and assigns, Southtrust Bank, a National Association being
the merging bank by name of the same business entity
formerly known as Peoples National Bank of Huntsville,
Alabama, as Trustee of the Commercial Fishermen and Fish
Vendors of the Wheeler Reservoir Trust Fund,
Defendants/Counterclaim Plaintiffs-Appellees.
 No. 86-7006
Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 March 17, 1987.
 
 Clement J. Cartron, Huntsville, Ala., for defendant/counterclaim plaintiff-appellant.
 Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Deputy Gen. Counsel, Charles W. Van Beke, Asst. Gen. Counsel, D. Mark Hastings, Tennessee Valley Authority, Knoxville, Tenn., for TVA.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT, HATCHETT and CLARK, Circuit Judges.
 HATCHETT, Circuit Judge:
 
 Background
 
 1
 This appeal arises out of a loan program formulated and administered by the Tennessee Valley Authority (TVA) to aid fishermen in Triana, Alabama, whose livelihoods were threatened when extensive DDT pollution was discovered in the Wheeler Reservoir of the Tennessee River.
 
 
 2
 TVA used funds provided for in the Energy and Water Development Appropriation Act of 1981, Pub.L. No. 96-367, 94 Stat. 1345 (1980), to develop the loan program. The House of Representatives and Senate Appropriation Committees recommended that $1,500,000 be appropriated to TVA for "Triana, Alabama, pollution mitigation," but failed to specify how the funds were to be used.
 
 
 3
 TVA developed a loan program following a meeting with fishermen and other interested persons at Tallucah Presbyterian Church. What transpired during this meeting is contested. Some of the fishermen claim that TVA officials agreed to develop a "sham" loan program which allowed them to borrow money without having to repay it. TVA officials acknowledge that one fisherman suggested a sham loan program, but deny agreeing to such a program.
 
 
 4
 TVA deposited the funds into a trust fund at Peoples National Bank of Huntsville, Alabama (Bank), and established criteria for issuing the loans. TVA also sent a letter to forty-four fishermen notifying them of the loan program and informing them that the program was "not a grant to you from the government." Due to the parties' differing views about the Tallucah meeting, litigation ensued.
 
 
 5
 In Peoples National Bank v. Meredith, No. CV84-L-5169-NE, an Alabama state court action, the bank sought damages against Dwight Meredith after he defaulted on his loan. Meredith answered raising several defenses including estoppel, waiver, and fraud. He also filed a counterclaim against the bank and TVA alleging among other things misrepresentation. Meredith amended the counterclaim to add four TVA employees as defendants and to add counts alleging conversion, breach of fiduciary duties, and the creation of a constructive trust. The four TVA employees removed the action to federal district court.
 
 
 6
 In Cloud v. Peoples National Bank, No. CV84-L-5182-NE, nine fishermen brought an action against the bank alleging, among other things, misrepresentation, conversion, and breach of fiduciary duties.
 
 
 7
 On July 20, 1984, the district court consolidated the cases. Subsequently, the district court granted TVA, TVA officials, and the bank's motions for partial summary judgment dismissing all except the misrepresentation counts. The court held that these parties did not conceal material facts related to repayment of the loan; that no implied contract was made at the Tallucah Church meeting; that the congressional appropriation did not create a constructive trust; and that TVA's agreement with the bank did not create a trust to which the fishermen were beneficiaries.
 
 
 8
 On August 15, 1984, TVA, TVA officials, and the bank filed answers in Cloud denying the allegations of the misrepresentation counts and raising affirmative defenses. The bank also filed a counterclaim against eight of the nine fishermen for payment on unpaid and overdue notes. TVA moved for summary judgment to dismiss the misrepresentation counts on the ground that its administration of the loan program was a discretionary function. TVA officials moved for summary judgment on the ground that they were immune because they were federal employees exercising discretionary functions within the outer parameters of their lines of duty. The district court granted the motions and dismissed the action as to TVA and TVA officials. Thus, only the bank's counterclaims against the fishermen remained for trial in the Cloud action. On August 1, 1985, TVA and TVA officials moved for summary judgment on the misrepresentation counterclaims in Meredith on the same grounds. The district court also granted this motion; thus, the only claims left in that case were the bank's claim against Meredith and his counterclaim against the bank.
 
 
 9
 At a trial on November 12-18, 1985, the issues were submitted to the jury on special interrogatories. The jury found that the fishermen were not induced to execute their notes by TVA or the bank's misrepresentation and that they were liable to the bank for the sums loaned. The district court entered judgment in accordance with the jury's verdict.
 
 Discussion
 
 10
 The fishermen's primary contention in this appeal is that the district court erred in granting TVA and the TVA officials' motions for summary judgment on grounds of immunity. The bank argues that the motions were correctly granted and urges that we affirm the district court's judgment. In our review, we need only discuss the issues regarding immunity to adequately dispose of this appeal.
 
 
 11
 A. TVA's Liability.
 
 
 12
 First, we note that the doctrine of sovereign immunity does not bar suit against TVA; indeed, its enabling act provides that it "[m]ay sue and be sued in its corporate name." 16 U.S.C. Sec. 831(c)(b). Nevertheless, courts have held that TVA cannot be subject to liability when engaged in certain governmental functions. Queen v. Tennessee Valley Authority, 689 F.2d 80, 85 (6th Cir.1982). This "nonliability" doctrine is applied when the subject governmental function is discretionary. Morris v. Tennessee Valley Authority, 345 F.Supp. 321 (N.D.Ala.1972). See also J.H. Rutter Rex Manufacturing Company, Inc. v. United States, 515 F.2d 97 (5th Cir.1975).
 
 
 13
 The fishermen acknowledge the foregoing nonliability doctrine but contend that TVA was not acting "in one of those limited situations where it could be immune from liability." Specifically, the fishermen argue that TVA's development and administration of the loan program was not a discretionary function because Congress mandated that it spend funds appropriated in the Energy and Water Development Appropriation Act to assist them. TVA contends that its development and administration of the loan program was a discretionary function because Congress appropriated the funds without restriction and gave TVA unrestricted latitude in deciding how to parcel them out.
 
 
 14
 Deciding whether agency action is discretionary is not an easy task; however, we do not write upon an entirely clean slate. Some guidelines have been established. In J.H. Rutter Rex Manufacturing Company, Inc. v. United States, 515 F.2d 97 (5th Cir.1975), where an employer brought an action against the National Labor Relations Board under the Federal Tort Claims Act, the former Fifth Circuit discussed the discretionary function exception to the United States's waiver of its sovereign immunity under the Act:
 
 
 15
 An absolutist interpretation of the discretionary function is improper. Smith v. United States, 375 F.2d 243 (5th Cir.), cert. denied, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967). It is not sufficient for the government to demonstrate that some choice was involved in the decision making process. That showing can be made in almost every case. Pigott v. United States, 451 F.2d 574 (5th Cir.1971). The nature of the judgment must also call for the balancing of policy considerations. Griffin v. United States, 500 F.2d 1059 (3d Cir.1974); Moyer v. Martin Marietta Corporation, 481 F.2d 585 (5th Cir.1973).
 
 
 16
 J.H. Rutter Rex Mfg. Co., Inc. at 99. In light of the above statements, TVA's arguments are persuasive. Although the House and Senate appropriations committees recommended that $1,500,000 be appropriated to TVA for "Triana, Alabama, pollution mitigation," the agency was never given any directive as to program development. In an effort to develop the best possible program, TVA officials met with the fishermen and discussed alternatives for providing aid. Subsequently, TVA developed the loan program. We agree with the district court that TVA's development and administration of the loan program was a discretionary governmental function such that the agency could not be held liable for alleged misdeed arising out of the program's development or administration.
 
 
 17
 The fishermen also contend that the district court erred in holding that the individual defendants, TVA officials, were absolutely immune from liability. The fishermen do concede, however, that the issues regarding TVA's "nonliability" and TVA officials' immunity are, in this case, inextricably bound together. We hold that the TVA officials, like the agency employing them, could not be held liable in this case because they were performing discretionary functions and acting within the outer parameters of their official duties. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Johns v. Pettibone Corporation, 769 F.2d 724 (11th Cir.1985) (government employees enjoy immunity if challenged conduct involves discretionary functions within the outer parameters of their duties).
 
 Conclusion
 
 18
 We have considered the fishermen's other claims regarding the creation of a constructive trust and find them unpersuasive. Thus, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 19
 CLARK, Circuit Judge, dissenting in part and concurring in part:
 
 
 20
 While I dissent from the majority opinion's holding that the Tennessee Valley Authority is immune from suit, I have to agree that appellants cannot recover in this lawsuit as it was cast by the pleadings in the Alabama State Court and recast after removal to the United States District Court for the Northern District of Alabama.
 
 
 21
 The majority holds that the TVA was immune from liability because its disposition of the funds appropriated by Congress was a discretionary function, relying chiefly upon J.H. Rutter Rex Manufacturing Co., Inc. v. United States, 515 F.2d 97 (5th Cir.1975). This latter case was based upon the Federal Torts Claims Act. The discretionary function as applied in FTCA case is different from that relied in determining the liability of an agency for failure to expend funds appropriated by Congress. In Springdale Convalescent Center v. Mathews, 545 F.2d 943 (5th Cir.1977), the court held the following:
 
 
 22
 In appropriating these funds Congress has directed that they be used by the Secretary to fulfill his statutory obligations and achieve the declared purposes of the Medicaid Act. An action to compel a federal officer to distribute an annual appropriation made by Congress, as here, is not barred by sovereign immunity. See Train v. City of New York, 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975); National Council of Community Health Centers, Inc. v. Weinberger, 361 F.Supp. 897 (D.D.C.1973).
 
 
 23
 Id. at 950-51.
 
 
 24
 Train v. City of New York, cited by the Fifth Circuit in the foregoing opinion is somewhat analogous to the present case. There, Congress appropriated funds for controlling and abating water pollution. The agency refused to allot among the states the maximum amounts provided by the indicated appropriation. The Supreme Court held that the agency did not have the discretion to reduce the amount appropriated and held in effect that there was no government immunity.
 
 
 25
 The best statement in support of the right to sue a government agency under circumstances such as this is contained in National Council of Community Mental Health Centers, Inc. v. Weinberger, 361 F.Supp. 897 (D.D.C.1973), cited with approval by the Fifth Circuit in Springdale Convalescent Center. The district court in the mental health case had the following to say:
 
 
 26
 To say that persons immediately and seriously affected by failure to commit funds authorized by the Legislature cannot go to court is to ignore the democratic base of our society. Indeed, it is only when the three equal and coordinate branches of government function that a stable government can be assured. Cf. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). The rule of law dictates calm judicial determination rather than political confrontation.... These cases should move to higher courts for prompt, definitive determination shorn of the confusing inconsequential defenses so typical of Government legalese these days. The defendants' motion to dismiss is denied.
 
 
 27
 361 F.Supp. at 901.
 
 
 28
 The funds in controversy here derive from the 1980 appropriation to the Tennessee Valley Authority Fund which in its gross amount was $269,563,000. The one line item under the Community Development Fund of $16,827,000 was the following: "Triana, Ala. Pollution Mitigation $1,500,000." S.Rep. No. 927, 96th Cong., 2d Sess. 162 (1980). The House committee report with respect to this particular allotment stated the following:
 
 
 29
 "Triana, Alabama Pollution Mitigation--The committee has received extensive testimony on the environmental and social problems facing the residence of Triana, Alabama, caused by DDT contamination of the surrounding water. The committee recommends an appropriation of $1,500,000 to assist the commercial fishermen in the area, other business and labor development activities as well as design and construction of a sanitary sewer system and a commercial greenhouse."
 
 
 30
 H.R.Rep. No. 1093, 96th Cong., 2d Sess. 150 (1980).
 
 
 31
 I conclude from the previously mentioned legal precedents that the TVA was amenable to a lawsuit based upon its apparent failure to expend the funds as appropriated. The appropriation was for community development. There was no reference to loans. Appropriations for governmental loan programs which contemplate reimbursement to the government are appropriated pursuant to a different methodology. Nevertheless, in the context of the current lawsuit, the appellants cannot prevail. As discussed in the majority opinion, the TVA contracted with Peoples National Bank of Huntsville, Alabama by the terms of which the agency deposited $350,000 in the bank which was to be used by the bank to make loans to various businessmen, including the fishermen, in the Triana, Alabama area, such loans to be subject to TVA approval. It is these loans which are the subject matter of this litigation. The appellants are defending lawsuits brought by the bank with an affirmative defense that the money belongs to the TVA, not the bank, and that TVA is estopped from permitting the bank to sue on such loans because of the nature of the appropriation previously described and certain oral statements made by TVA employees. It is apparent on the face of the facts that the borrowers cannot vary their written loan agreements with the bank based upon such an affirmative defense. For this reason I think the district court was correct in refusing the appellants the offer of such evidence of oral statements at the trial of the case and the district court judgment based upon the jury's answers to written interrogatories is due to be affirmed.