Carlton G. SPRINGER, Sr., as Administrator of the Estate of Bettie I. Springer, deceased, Plaintiff–Appellant,

v.

Charles Ray BRYANT; and Tennessee Valley Authority, Defendants–Appellees.

No. 89–7272.

United States Court of Appeals, Eleventh Circuit.

April 2, 1990.

John E. Higginbotham, Higginbotham & Whitten, Thomas McCutcheon, Florence, Ala., for plaintiff-appellant.

James E. Fox, Deputy General Counsel, Edwin W. Small and Robert C. Glinski, Assistant General Counsels, D. Mark Hastings, Tennessee Valley Authority, Knoxville, Tenn., for defendants-appellees.

Before TJOFLAT, Chief Judge, ANDERSON and CLARK, Circuit Judges.

ANDERSON, Circuit Judge:

This case commenced as a wrongful death action in Alabama state court against Charles Ray Bryant, and the Tennessee Valley Authority ("TVA"). The action arose out of an October 27, 1987 car accident in which plaintiff-appellant's decedent, Bettie I. Springer, died. The complaint alleged that Bryant caused the accident and that Bryant was driving a TVA truck in the course and scope of his TVA employment at the time of the accident. The suit was filed under the Alabama wrongful death statute, 1975 Ala.Code § 6–5–410, and sought to recover punitive damages.

On November 17, 1988, Bryant and the TVA removed the state court action to federal court, and on February 17, 1989, they filed a motion to dismiss accompanied by a TVA certification pursuant to Section 9(b)(1) of the recently enacted Federal Employees Liability Reform and Tort Compensation Act ("FELRTCA"), Pub.L. No. 100–694, 102 Stat. 4563 (1988) [hereinafter referred to by section number]. The motion asserted that Bryant was acting in the course and scope of his TVA employment at the time of the accident, thus triggering the substitution of TVA and the removal of Bryant as the party defendant pursuant to Section 9(b)(1).[1] The motion to dismiss was based on the proposition that the TVA, the only remaining party in the litigation, was protected from an Alabama wrongful death action by virtue of the agency's sovereign immunity. The district court dismissed the action with prejudice on March 10, 1989.

## DISCUSSION

The purpose of the FELRTCA is to create absolute immunity for federal employees who, within the scope of their employment, commit common law torts. Section 2(b). The legislation was enacted as a response by Congress to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), in which the Supreme Court held that only officials whose actions were performed "within the outer perimeter of [the] official's duties and [were] discretionary in nature" were entitled to official immunity from tort actions. *Id.* at 299, 108 S.Ct. at 585. Believing that the *Westfall* decision seriously eroded the common law tort immunity available to federal employees thereby creating an immediate crisis in which all federal employees were confronted with the prospect of being held personal-

1. Section 9(b)(1) provides that:

(b) REPRESENTATION AND REMOVAL.—
(1) Upon certification by the Tennessee Valley Authority that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding heretofore or hereafter commenced upon such claim in a United States district court shall be deemed an action against the Tennessee Valley Authority pursuant to 16 U.S.C. 831C(b) and the Tennessee Valley Authority shall be substituted as the party defendant.

ly liable for actions taken within the scope of their employment and fearing that this potential threat of personal liability and protracted tort litigation could undermine the morale of federal employees and the effectiveness of the agencies in which they were employed, Congress enacted the FELRTCA to overrule *Westfall.*[2] *See generally Sowell v. American Cyanamid Co.,* 888 F.2d 802, 805 (11th Cir.1989).

As originally proposed by Congress, the FELRTCA was solely designed to create a statutory mechanism through which tort actions against federal employees would be transformed into actions against the federal government to be channelled through the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2670–80. This objective was accomplished through the creation of the following provisions: First, the FELRTCA allows for the Attorney General to certify or the employee to establish that the employee's actions at the time of the alleged incident at issue occurred while the employee was acting within the scope of his or her employment. Once this fact is established, the United States must be substituted for the employee as a party defendant and the action proceeds as if it had originally been brought as an FTCA claim against the federal government.[3] Section 6. Finally, the Act's provisions are to be applicable to any and all cases pending on the date of enactment, and the statutory remedy against the United States is to be the exclusive remedy for tort claims arising out of the employee's actions or omissions that gave rise to the claim. Sections 8 and 5.

Because the original draft of the legislation was designed only to amend the FTCA, the statutory protections accorded to federal employees would not have encompassed employees of the TVA. *See* 28 U.S.C. § 2680(*l*) (excluding the TVA from the scope of the FTCA's coverage); *Painter v. Tennessee Valley Authority,* 476 F.2d 943, 945 n. 3 (5th Cir.1973) (per curiam).[4] Recognizing this void in coverage and believing that TVA employees were equally in need of immunity from state tort law liability, the Senate proposed an amendment to the FELRTCA to include employees of the TVA within the Act's scope. 134 Cong.Rec. S15599 (daily ed. Oct. 12, 1988).

This amendment, which was adopted and integrated as Section 9 of the FELRTCA, mirrors the FELRTCA's protections for federal employees. Upon proper proof that the employee was acting within the scope of his or her employment at the time that the alleged incident took place, the TVA is to be substituted for the employee as the party defendant. Section 9(b)(1), 9(b)(3).[5]

---

**2.** As the Fifth Circuit recently explained, the FELRTCA "overrules the distinction *Westfall* drew between 'operational' and 'discretionary' capacities, and creates absolute tort immunity for acts of Federal employees within the course and scope of their employment." *Lunsford v. Price,* 885 F.2d 236, 237 n. 5 (5th Cir.1989).

**3.** We note that there is presently a difference of opinion in the federal courts as to whether the determination and certification by the Attorney General that an individual was working within the scope of his or her employment is judicially reviewable. *Compare Aviles v. Lutz,* 887 F.2d 1046, 1049 (10th Cir.1989) (upon certification by the Attorney General that an employee was working within the scope of his or her employment, the district court possesses no independent authority of review and must substitute the United States as party defendant); *Arbour v. Jenkins,* 713 F.Supp. 229, 230 (E.D.Mich.1989) (same); *Mitchell v. United States,* 709 F.Supp. 767, 768 & n. 4 (W.D.Tex.1989) (same), *rev'd on other grounds,* 896 F.2d 128 (5th Cir.1990), *with Gogek v. Brown University,* 729 F.Supp. 926 (D.R.I.1990) (determination of whether an employee was working within the scope of some

federal employment for substitution purposes is "one for the Court to make in accordance with the traditional guarantees of due process"); *Petrousky v. United States,* 728 F.Supp. 890 (N.D.N.Y.1990) (same); *Baggio v. Lombardi,* 726 F.Supp. 922, 925 (E.D.N.Y.1989) (same); *Martin v. Merriday,* 706 F.Supp. 42, 44–45 (N.D.Ga. 1989) (same). Because this issue is not presently before us, we express no opinion as to what effect, if any, a federal court faced with a motion to substitute the United States as a party defendant for an individual defendant should give the Attorney General's certification that the employee was working within the scope of his or her employment.

**4.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

**5.** *See* note 1, *supra,* for the text of Section 9(b)(1). Section 9(b)(3) reads, in pertinent part, as follows:

(3) In the event that the Tennessee Valley Authority has refused to certify scope of office

Upon substitution of the TVA, the litigation is "to proceed in the same manner as any action against the Tennessee Valley Authority and shall be subject to the same limitations and exceptions applicable to those actions." Section 9(b)(4). And finally, as with the statutory framework governing claims against federal employees, this statutory remedy against the TVA is to be the exclusive remedy for tort claims arising out of the employee's actions or omissions that gave rise to the claim. Section 9(a).[6]

On appeal, plaintiff-appellant seizes upon a drafting error in Section 9(c) of the FELRTCA to challenge the district court's conclusion that sovereign immunity protects the TVA from an Alabama wrongful death action.[7] This provision, as enacted, provides the following:

> (c) RETENTION OF DEFENSES.— Section 2674 of title 28, United States Code, is amended by adding at the end thereof the following new paragraph:

> or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action shall be deemed an action brought against the Tennessee Valley Authority, and the Tennessee Valley Authority shall be substituted as the party defendant. A copy of the petition shall be served upon the Tennessee Valley Authority in accordance with the Federal Rules of Civil Procedure....

As discussed, note 3, *supra,* there is some disagreement as to whether certification by the governmental body that the employee was acting within the scope of his or her employment is an irrebuttable and, hence, nonreviewable determination for substitution purposes. Because Springer in this case has conceded that Bryant was acting within the scope of his employment with the TVA, we need not reach this question here.

6. Section 9(a) provides, in its entirety, that:

> (a) EXLUSIVENESS [sic] OF REMEDY.— (1) An action against the Tennessee Valley Authority for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Tennessee Valley Authority while acting within the scope of this [sic] office or employment is exlusive [sic] of any other civil action or proceeding by reason of the same subject matter against the employee or his estate whose act or omission

> "With respect to any claim to which this section applies, the Tennessee Valley Authority shall be entitled to assert any defense which otherwise would have been available to the employee based upon judicial or legislative immunity, which otherwise would have been available to the employee of the Tennessee Valley Authority whose act or omission gave rise to the claim as well as any other defenses to which the Tennessee Valley Authority is entitled under this chapter.".

Plaintiff-appellant argues that this provision, while purporting to provide the TVA with additional defenses actually has the opposite effect and strips the TVA of its preexisting sovereign immunity. In making this argument, plaintiff-appellant relies upon the fact that Section 9(c) purports to amend 28 U.S.C. § 2674 of the Federal Tort Claims Act. However, as noted earlier, the FTCA does not include the TVA

> gave rise to the claim. Any other civil action or proceeding arising out of or relating to the same subject matter against the employee or his estate is precluded without regard to when the act or omission occurred[.]
> (2) Paragraph (1) does not extend or apply to a cognizable action against an employee of the Tennessee Valley Authority for money damages for a violation of the Constitution of the United States.

7. In the district court, plaintiff-appellant sought to avoid dismissal by raising constitutional challenges to the FELRTCA provisions providing for substitution of the TVA, Section 9(b)(1), and also to the retroactivity provision, Section 9(a)(1). On appeal, however, plaintiff-appellant no longer raises a constitutional challenge to the fact that Section 9(b)(1) of the FELRTCA allows for substitution of the TVA as a defendant in any action in which one of its employees is sued for damages as a result of a tort arising under state law. Similarly, plaintiff-appellant does not challenge the statutory retroactivity provision of the FELRTCA, Section 9(a)(1), that allows for the substitution of the TVA in any action regardless of whether the date of the alleged tort preceded the FELRTCA's enactment.

Moreover, this court recently rejected constitutional challenges to the parallel substitution and retroactivity provisions of the FELRTCA in cases involving federal employee defendants in state law tort actions. *Sowell v. American Cyanamid Co.,* 888 F.2d at 805.

within its scope of coverage.[8] Thus, plaintiff-appellant contends that Section 9(c)'s provision that the TVA may raise "any other defenses to which the [TVA] is entitled under this subchapter" is a nullity and that the effect of this section is to limit the TVA's available defenses to only those defenses that could have been raised by its employees.

■ This argument is contrary both to the explicit language of the statute, Section 9(b)(4), and to the legislative history. Section 9(b)(4) provides:

> Upon certification, any actions subject to paragraph (1), (2), or (3) shall proceed in the same manner as any action against the Tennessee Valley Authority and shall be subject to the limitations and exceptions applicable to those actions.

Under Section 9(b)(4), it is clear that the TVA retains the usual defenses it enjoys in "any action." Since Section 9(c)—which plaintiff-appellant interprets as purporting to provide defenses but actually providing none—does not purport to provide an exhaustive or exclusive list of defenses available to the TVA, it is not inconsistent to conclude that Section 9(b)(4) retains for the TVA all of its usual defenses, even if plaintiff-appellant's interpretation of Section 9(c) is correct. Moreover, the legislative history clearly establishes Congress's intent that the TVA retain its usual defenses.[9] Thus, we conclude that in an action such as this where the TVA is substituted as the party defendant pursuant to Section 9, the TVA retains its usual defenses. In so holding, we agree with and follow the well-reasoned opinion of the Fifth Circuit in *Lunsford v. Price*, 885 F.2d 236 (5th Cir.1989).

■ Given this conclusion, it is clear that the district court was correct in finding the plaintiff-appellant's wrongful death claim barred by TVA's sovereign immunity. The TVA is a federally owned corporation that acts as an agency or instrumentality of the United States. Thus, while it may sue or be sued in contract or tort, 16 U.S.C. § 831c(b), it may not be sued for punitive damages unless Congress has so provided. *See Painter v. Tennessee Valley Authority*, 476 F.2d at 944.

■ As we observed in *Painter* as well as in later cases,[10] Alabama courts have treated the damages awardable under the Alabama Wrongful Death Statute as being solely punitive in nature.[11] We are bound by this judicial construction of the purpose and function underlying Alabama's wrongful death statute and, finding no evidence of Congressional intent to the contrary, are thus compelled to follow *Painter* and conclude that an Alabama wrongful death action may not lie against the TVA.

In so holding, we are cognizant of the fact that the result we reach may very well not be one that Congress anticipated. As we noted in *Painter*, Alabama is one of the few states in which the courts construe a wrongful death statute as permitting only an award of punitive damages. Our observations in *Painter* are equally appropriate here:

> It is altogether anamolous [sic] that similarly situated survivors could maintain this action against the TVA under the law of practically any other state while those who have the misfortune of being relegated to the use of Alabama

---

8. Only Section 9(c), and not Sections 9(a) and (b), purports to amend the Federal Tort Claims Act. Thus, the drafting error upon which appellant relies affects only Section 9(c).

9. After passage by both the House and Senate but prior to the final enactment of the FELRTCA, Congress became aware of the fact that Section 9(c)'s reference to the FTCA was flawed. To correct this error, the House and Senate passed a concurrent resolution directing the Clerk of the House to make "technical corrections" to Section 9(c) by deleting all references to the FTCA. 134 Cong.Rec. H10678 (daily ed. Oct. 20, 1988); 134 Cong.Rec. S16375 (daily ed. Oct. 14, 1988). Inexplicably, however, the bill

was presented to the President for signing without the anticipated changes having been made. For an in-depth discussion of the legislative history, see *Lunsford v. Price*, 885 F.2d at 238–39.

10. *See, e.g., Lowe v. General Motors Corp.*, 624 F.2d 1373, 1382 (5th Cir.1980); *Ellis v. Zuck*, 546 F.2d 643, 644 (5th Cir.1977) (per curiam).

11. *Black Belt Wood Co. v. Sessions*, 514 So.2d 1249, 1260–63 (Ala.1986); *Young v. Bryan*, 445 So.2d 234, 238 (Ala.1983); *Carter v. City of Birmingham*, 444 So.2d 373, 375 (Ala.1983), *cert. denied*, 467 U.S. 1211, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984).

law are permitted no right of action at all. This lack of uniformity of tort responsibility of a federal institution based on the fortuity of geography is irrational. However, this inferior federal court has no power and declines to assume the temerity to so intrude in matters traditionally committed to the States as to declare the existence of a federal right in the survivors to recover for a decedent's death, even though the "policy ... [of recognizing such a right] has become itself a part of our law, to be given its appropriate weight not only in matters of statutory construction but also in those of decisional law." *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 390–91, 90 S.Ct. 1772, 1782, 26 L.Ed.2d 339 (1970).

The aberration in such cases must find its remedy through an appropriate Congressional waiver of the TVA's immunity to punitive damages or by the creation of some uniform federal right of action, or by Alabama's amendment or reinterpretation of its law.

*Id.* at 944–45 (footnotes omitted).

If anything, our concerns expressed in *Painter* are heightened after the enactment of the FELRTCA. In amending the statute to include the TVA within its scope, Congress expressed its concern that "the same protections enjoyed by Federal employees should be enjoyed by TVA employees." 134 Cong.Rec. S15599 (daily ed. Oct. 12, 1988). Through what appears to be an oversight, the actual statute enacted by Congress has left the survivors of individuals killed by the negligent acts or omissions of TVA employees in a far worse position than the survivors of individuals who are killed as a result of the tortious conduct of federal employees. In both cases, if it turns out that the employee was acting within the scope of his or her employment at the time of the accident, the employee is absolutely immune from liability and the employee's employer—either the TVA (in the former instance) or the United States (in the latter)—will be substituted for the employee. If the employer were the United States, however, then an action such as the one here would proceed under the FTCA, notwithstanding the fact that Alabama law characterizes the action as being one for punitive damages. *See* 28 U.S.C. § 2674 (providing that, in tort actions where death was caused, "[i]f ... the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof").

At present, there is no such counterpart for the same claim brought against the TVA. We can imagine no rational justification why different results should be reached depending solely upon whether the individual is employed by the federal government or by the TVA. However, until Congress acts to remedy this situation by waiving the TVA's immunity or enacting a provision comparable to § 2674, we are constrained to conclude that plaintiff-appellant's action may not lie against the TVA.[12]

Accordingly, the judgment of the district court is

AFFIRMED.

12. We have reviewed carefully the legislative history of Section 9 of the FELRTCA to discern any indication from Congress that it sought to extend § 2674's coverage to cases such as this against the TVA. We recognize that Section 9(c), as enacted, explicitly references § 2674. However, as explained in note 8, *supra,* the legislative history clearly reveals that this reference to § 2674 was a result of Congressional error, and was not an attempt to include the TVA within § 2674. Looking to the language of Section 9(c), there is nothing to indicate that the section was intended to accomplish anything other than ensure that the TVA could raise any defenses that would have been available either to the TVA itself or its substituted employee. This conclusion is reinforced by the fact that Section 9(c) is merely the parallel provision to Section 4 of the FELRTCA concerning the defenses available to the United States upon substitution for its employees.