**Charles M. HILL, Plaintiff,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant.**

No. CV–93–H–1369–NE.

United States District Court, N.D. Alabama, Northeastern Division.

Oct. 1, 1993.

Dan C. Totten, Athens, AL, for plaintiff.

Edward S. Christenbury, Gen. Counsel, James E. Fox, Deputy Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel, A. Jackson Woodall, Tennessee Valley Authority, Knoxville, TN, for defendant.

## MEMORANDUM OF DECISION

HANCOCK, District Judge.

The court has before it the defendant's August 5, 1993 motion for summary judgment. Pursuant to the court's August 10, 1993 order, that motion was deemed submitted for decision, without oral argument, as of September 7, 1993.

Plaintiff originally filed his complaint in the Circuit Court of Limestone County on February 16, 1993, alleging that five employees[1] of the Tennessee Valley Authority ("TVA") conspired in a scheme resulting in the defamation of plaintiff by communicating false information concerning his role in the erroneous disarming of two drywell doors within the Browns Ferry Nuclear Plant.

On July 8, 1993, TVA removed the action to this court. TVA certified that the employees were acting within the scope of their employment and moved on July 12, 1993, to have TVA substituted as the party defendant pursuant to 16 U.S.C. § 831c–2(b)(2). The court's July 14, 1993 order substituted TVA as the defendant in this action and dismissed with prejudice the employees as defendants.

In support of its motion for summary judgment, TVA submitted a memorandum of law and filed numerous unpublished opinions and

---

1. The original complaint named the following employees as defendants: (1) Allen W. Sorrell, maintenance manager for Unit Two of the Browns Ferry Nuclear Plant; (2) David O. Elkins, shift operations supervision for Unit Two of the Browns Ferry Nuclear Plant; (3) Lew Myers, plant manager of Browns Ferry Nuclear Plant; (4) Christopher M. Crane, lead investigator for TVA concerning the incident in question; and (5) Dan A. Nauman, TVA senior vice-president in charge of its Nuclear Power Division ("the employees").

the affidavit of Deborah A. Cherry with exhibits. Plaintiff submitted a memorandum of law in opposition to this motion and filed the affidavits of plaintiff and John E. Whitt.

The following facts are undisputed. On June 4, 1991, when the Browns Ferry Nuclear Plant was returning to operation for testing two drywell doors in an airlock area were left open for a four-hour period ("the incident"). This airlock area could have allowed the direct release of radiation into the atmosphere had an accident occurred.

Plaintiff was the Maintenance General Foreman on duty during the incident. On June 10, 1991 TVA terminated plaintiff's employment by a letter stating that his termination was due to his failure to take proper action during the incident and due to his providing of misleading information during TVA's investigation of the incident. The incident led to the termination of three TVA employees, including the plaintiff, the disciplining of 14 other employees, the shut down of the plant for a week at a loss to TVA of over $1 million, and the Nuclear Regulatory Commission fining TVA $75,000.

Plaintiff told the TVA investigator that shortly after the maintenance mechanic told him the doors in the airlock area were open, around 3 a.m. on June 5, 1991, he informed the Shift Operations Superintendent, David O. Elkins, that these doors were open. TVA's investigator found that plaintiff had been misleading in this statement.

■ Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S.Ct. at 2552. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. Id. at 322–23, 106 S.Ct. at 2552; see Fed.R.Civ.P. 56(a) and (b).

■ Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322, 106 S.Ct. at 2552.

■ The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id., 477 U.S. at 248, 106 S.Ct. at 2510. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249, 106 S.Ct. at 2510.

### I.

■ In United States v. Fausto, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), the Supreme Court established that the Civil Service Reform Act ("CSRA") precludes this court from reviewing any personnel actions involving federal employees in the excepted service under the auspices of state tort law claims. Courts have held that TVA employees are federal employees within the excepted service, under 5 U.S.C. § 2103, and thus precluded from a judicial determination of personnel-related suits by Fausto[2]. Dodd v.

2. As a government corporation, TVA is considered an agency of the executive branch. Thus, TVA employees are regarded as federal employees in the excepted service under CSRA. Dodd v. Tennessee Valley Authority, 770 F.2d 1038, 1040 (Fed.Cir.1985).

*Tennessee Valley Authority,* 770 F.2d 1038, 1040 (Fed.Cir.1985).

◼ Considering the courts' broad interpretation as to the applicability of CSRA, its preclusive effect encompasses more the merely disputes as to the reasons of termination as argued by plaintiff. *Broughton v. Courtney,* 861 F.2d 639, 641 (11th Cir.1988); 5 U.S.C. § 2302(a)(2)(A). Where the plaintiff's claims arose out of their employment relationship with the federal government and all actions taken by the defendants were related to the plaintiff's status as a federal employee, the actions constitute personnel decisions under CSRA, 5 U.S.C. § 2302(a)(2)(A). *Rollins v. Marsh,* 937 F.2d 134, 138 (5th Cir.1991).

Other than the press releases involved in the allegations against Nauman, all allegations of defamation involve statements made by the employees or adopted during the process of deciding whether plaintiff should be terminated from TVA's employment and during the internal investigation of plaintiff's termination. Therefore, plaintiff's defamation claims, except the claim against Nauman for issuing reports to the press, are precluded from judicial determination by CSRA. *Berrios v. Department of the Army,* 884 F.2d 28, 32 (1st Cir.1989). Since the alleged conspiracy by the employees was intended to result in termination of plaintiff as a means of protecting Elkins' job and all the alleged actors were authorized to make personnel-type decisions, the plaintiff's claim of a conspiracy involves personnel actions and thus is also precluded from any judicial determination by the CSRA. *Broughton v. Courtney,* 861 F.2d 639, 641 (11th Cir.1988).

## II.

In addition to the foregoing, defendant separately argues that TVA is entitled to summary judgment as to all plaintiff's claims (including the claim against Nauman for issuing press releases) based on immunity. Defendant argues that the employees acted within the scope of their employment with TVA when performing the acts in question, and thus TVA is entitled to immunity from tort liability based on the immunity provided to TVA employees under the Federal Employees Liability Reform and Tort Compensation Act ("FELRTCA"). Secondly defendant argues that TVA itself is entitled to sovereign immunity. However plaintiff denies that the named employees were acting in the scope of their employment and argues that since the complaint specifically alleges that all wrongful actions were in excess of the individuals' scope of employment with TVA, immunity in not available for the employees' acts.

◼ FELRTCA creates a statutory mechanism which immunizes federal employees from personal liability for common law torts committed within the scope of their employment by transforming cases against individual employees into actions against the federal government which become subject to the limitations of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80. *Springer v. Bryant,* 897 F.2d 1085, 1087 (11th Cir.1990). Since TVA employees are not covered by the FTCA, section nine of FELRTCA, 16 U.S.C. 831c–2(b), was added in order to protect TVA employees by requiring the substitution of TVA for an employee named as a party defendant who is certified or proven to be acting within the scope of his or her employment at the time the alleged incident occurred. *Springer,* 897 F.2d at 1087. Thus in order for TVA employees to be entitled to immunity from common law tort liability under FELRTCA, TVA employees must be shown to have acted within the scope of their employment.

### A. Were Acts Within the Scope of Employment?

◼ The certification by TVA "shall conclusively establish scope of office or employment *for purposes of removal.*" 16 U.S.C. § 831c–2(b)(2) (emphasis added). However, certification by TVA does not preclude a judicial determination on whether the employee acted within the scope of his employment[3]. "[O]nce in federal court, the

---

3. The court relies upon the holding in *S.J. & W Ranch v. Lehtinen,* 913 F.2d 1538 (11th Cir. 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991), on the basis that the substitution of TVA in a suit against its employee and the certification procedure in 16 U.S.C. § 831c–2(b)(2) are parallel to the provision in Section 4 of the Federal Employees Liability

plaintiff is entitled to litigate the question of whether the employee was acting within the scope of his employment when the challenged acted occurred." *S.J. & W Ranch v. Lehtinen,* 913 F.2d 1538, 1542 (11th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991). Then the court's determination of whether an employee's actions are actually within the scope of employment for purposes of FELRTCA is governed by the law of the state where the incident occurred. *Id.*

Once certification occurs under FELRTCA, 16 U.S.C. § 831c–2(b), the plaintiff bears the burden of proving the employee acted outside the scope of his employment. *S.J. & W Ranch,* 913 F.2d at 1543. The administrative agency's certification that the employee acted within the scope of employment provides prima facie evidence of that fact and requires plaintiff to prove otherwise in order to alter the status quo. *Id.* Then the district court must make a de novo determination as to whether the employee acted within the scope of the employment when performing the acts in question. *Id.*

In this case the plaintiff has failed to provide evidence sufficient to create a question of fact as to whether the employees in question acted outside their scope of employment. While plaintiff alleges in his complaint that each of the employees acted outside their scope of employment, the only basis for these allegations is the *argument* that the employees violated 16 U.S.C. § 831t(b) and therefore the employees' actions must be viewed as outside the scope of their employment.

For the employees to have committed a felony under 16 U.S.C. § 831t(b), there must be evidence that they made false reports or statements to TVA with the intent to defraud TVA or to deceive any director, officer, or employee of TVA. The only evidence plaintiff relies upon to support his argument that the employees committed a felony are the affidavit of plaintiff and the affidavit of John E. Whitt. These two affidavits state that plaintiff called to inform David Elkins that

the drywell doors had been opened. Based on this fact alone, plaintiff alleges that the employees intended to deceive TVA by providing false statements or adopting a false investigative report as to plaintiff's actions during the incident. According to plaintiff, each of the employees named in the complaint must have known that plaintiff had properly informed Elkins that the two drywell doors were open and falsely reported the facts or adopted a untruthful version of the facts during TVA's internal investigation in order to protect Elkins.

TVA's internal investigative report on the incident substantiates the fact that although plaintiff called and informed Elkins, plaintiff failed to ensure that Elkins understood that both drywell doors were open. While plaintiff continues to dispute whether his call was sufficient to accurately communicate that both doors were open, plaintiff fails to provide any evidence of knowledge of falsity or intentional misrepresentations by any of the employees. Therefore, plaintiff's argument that the employees acted outside the scope of their employment fails.

Even if plaintiff could have shown that the employees had intentionally provided false information or adopted a false report of the incident, the employees' actions would not necessarily exceed their scope of employment. Under Alabama law, an employee may still be acting within the scope of employment when using unlawful means. *United States Steel Co. v. Butler,* 260 Ala. 190, 69 So.2d 685, 687–88 (1953).

Sorrell and Elkins were supervisory employees of TVA in the Browns Ferry Nuclear Plant's Unit Two. As supervisors for the area where the incident occurred, both Sorrell and Elkins had a responsibility to participate in the internal investigation by providing their own account of the source of the problem and to terminate plaintiff once it was determined that he had failed to take proper action during the incident. Therefore the providing of information by Sorrell and Elkins in the letter of termination and during the investigation, whether true or false, was required by the position they held with TVA.

Reform and Tort Compensation Act ("FELRTCA") where the United States is substituted for

its employees. *Springer v. Bryant,* 897 F.2d 1085, 1090 n. 12 (11th Cir.1990).

Furthermore, Crane as an investigator for TVA owed TVA the responsibility of conducting an investigation of the incident and discovering all facts and information. Therefore his reporting of the facts which he presented as accurate, whether truly accurate or not, was within his job requirements.

Myers had a duty as plant manager of the Browns Ferry Nuclear Plant to supervise the investigation and to insure that any problems were corrected. Plaintiff alleges that he informed Myers that John Whitt could confirm his notification of Elkins and Myers wrongfully ignored the evidence provided by John Whitt's potential statement. However, Myers is free to determine whether it was in the best interest of TVA to affirm Sorrell's decision to terminate the plaintiff or reverse that decision, based on whatever evidence he deems relevant. Myers' decision to affirm the termination of plaintiff, for whatever reasons, whether valid or invalid, was clearly within the scope of his position as plant manager for TVA's Browns Ferry Nuclear Plant.

As Senior Vice–President of TVA, Nauman served as the principal spokesperson for TVA's Browns Ferry Nuclear Plant and had the authority to determine what information is disseminated to the press concerning actions by or incidents within TVA. In a previous case the issuing of press releases was found to be within the scope of the TVA Plant Manager of Nuclear Power's position. *Quality Technology Co. v. Stone & Wester Eng'g Co.,* 745 F.Supp. 1331, 1342–43, (E.D.Tenn.1989), *aff'd,* 909 F.2d 1484 (6th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2052, 114 L.Ed.2d 458 (1991). Irrespective of Nauman's motive for releasing the information about the plaintiff's termination, such acts are within the line and scope of his position as the senior vice-president of TVA. *Butz v. Economou,* 438 U.S. 478, 495, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978).

Thus, based on all the facts provided and the allegations made as to the employees' wrongful conduct, this court concludes that plaintiff has failed to come forward with any evidence to show that the employees were acting outside the scope of their employment. Based on the undisputed evidence regarding each employee's position and the wrongful conduct alleged, the court is of the opinion that all employees were acting within the line and scope of their employment with TVA when involved in the alleged wrongful conduct.

### B. Are These Acts Subject to the Immunity Defense?

Since the court has determined that the alleged wrongdoers were acting within their scope of employment, the court turns to consider whether TVA is entitled to immunity from liability for these acts based on the employees' immunity or TVA's own sovereign immunity.

### 1. Are the TVA Employees Entitled to Immunity?

■ Once TVA was substituted for the employees and this action became plaintiff's exclusive remedy under FELRTCA, TVA gained the right assert any defense the employee would have had in this case, including immunity.[4] Under FELRTCA, TVA employees have to same degree of immunity as federal government employees. *United States v. Smith,* 499 U.S. 160, 168, 111 S.Ct. 1180, 1186, 113 L.Ed.2d 134 (1991). In *Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), the Supreme Court held that "absolute immunity from state law tort actions should be available only when the conduct of federal officials is within the scope of their official duties and the conduct is discretionary in nature." Then FELRTCA expanded immunity to create absolute tort immunity for acts of federal employees within the course and scope of their employment, whether discretionary or operational.

---

**4.** TVA "shall be entitled to assert any defense which otherwise would have been available to the employee based upon judicial or legislative immunity, which otherwise would have been available to the employee of the Tennessee Valley Authority whose act or omission gave rise to the claim as well as any other defenses to which the Tennessee Valley Authority is entitled under this chapter." 28 U.S.C. § 2674.

*Springer v. Bryant,* 897 F.2d 1085, 1087 n. 2 (11th Cir.1990).

Based on the court's previous conclusion, that the employees were acting within the line and scope of their employment when providing or adopting the alleged defamatory statements or press releases, the employees are clearly entitled to immunity from liability for defamation. Thus, pursuant to 28 U.S.C. § 2674, TVA is entitled to assert the immunity provided to the employees under FELRTCA in this action.

*2. Does TVA Have Sovereign Immunity?*

TVA retains its usual defense of sovereign immunity [5] when substituted as the party defendant in place of an employee originally named as the defendant. *Springer v. Bryant,* 897 F.2d 1085 (11th Cir.1990). "The TVA is a federally owned corporation that acts as an agency or instrumentality of the United States." *Springer v. Bryant,* 897 F.2d 1085, 1089 (11th Cir.1990). When TVA is engaged in a governmental function that is discretionary in nature, where the United States itself would not be liable, TVA cannot be subject to liability. *Peoples National Bank v. Meredith,* 812 F.2d 682, 685 (11th Cir.1987); *Queen v. Tennessee Valley Authority,* 689 F.2d 80, 86 (6th Cir.1982), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983).

Under 28 U.S.C. § 2680(h), a claim cannot be asserted against the United States for deliberate libel or slander by its agents. *Kessler v. General Services Administration,* 341 F.2d 275 (2d Cir.1964). If TVA is performing a governmental function, TVA shall be treated akin to the United States, and the substitution of TVA for its employees has the direct effect of "depriving the federal court of subject matter jurisdiction over the action because the FTCA does not waive sovereign immunity for such employee conduct occurring within the scope of employment." *S.J. & W Ranch v. Lehtinen,* 913 F.2d 1538, 1541 (11th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991).

Although FELRTCA relinquished the requirement in *Westfall* that the federal employee must be performing a discretionary act in order to be subject to immunity, the discretionary analysis remains helpful when examining the sovereign immunity of a government corporation, like TVA, who performs non-governmental and non-discretionary functions within its regular scope of operation.

The acts of TVA's employees in this case are clearly governmental in nature. TVA is authorized to operate and control its nuclear power facilities. 16 U.S.C. §§ 831c & 831f; *United States v. Three Tracts of Land,* 377 F.Supp. 631 (N.D.Ala.1974). The Nuclear Regulatory Commission requires TVA to investigate any problems with containment and make disclosures. 10 C.F.R., Part 50. Any information provided by the employees as to the source of the error in allowing the two drywell doors to stay open and the assessment of plaintiff as the responsible party were in furtherance of TVA's obligation to the Nuclear Regulatory Commission. Therefore TVA is eligible for official immunity as to these acts by its employees. *Slotten v. Hoffman,* 999 F.2d 333, 337 (8th Cir.1993).

Secondly, the acts were discretionary in nature because the decision of whether to terminate plaintiff and what information to release to the press concerning the incident call for the balancing of policy considerations. *J.H. Rutter Rex Manufacturing Co. v. United States,* 515 F.2d 97, 99 (5th Cir.1975), *cert. denied,* 424 U.S. 954, 96 S.Ct. 1428, 47 L.Ed.2d 359 (1976). "As a matter of law, discussions about personnel matters involve discretion because there is no standard by which such discussions can be measured." *Slotten v. Hoffman,* 999 F.2d 333, 337 (8th Cir.1993). The dissemination of information concerning safety measures within a nuclear facility and any danger of releasing radioactive material clearly requires the balancing of TVA' need for confidentiality as to internal affairs and TVA's policy of providing information to the public openly, promptly, and accurately on all nuclear power matters.

---

**5.** Under 16 U.S.C. § 831c-2(b)(4), the substitution of TVA requires the action to "proceed in the same manner as any action against the Ten-nessee Valley Authority and shall be subject to the same limitations and exceptions applicable to those actions."

The Supreme Court has held that the issuance of a press release by an administrative agency is discretionary and cannot be the basis of tort liability due to the agency's absolute immunity. *Barr v. Matteo,* 360 U.S. 564, 574–75, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959); *Butz v. Economou,* 438 U.S. 478, 495, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978). More specifically, alleged defamatory statements made to the press by a TVA Manager of Nuclear Power were found to be discretionary. *Quality Technology Co. v. Stone & Webster Eng'g Co.,* 745 F.Supp 1331, 1342–43, (E.D.Tenn.1989), *aff'd,* 909 F.2d 1484 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2052, 114 L.Ed.2d 458 (1991). Therefore, TVA should be immune from liability for torts involving information provided pursuant to their governmental function of operating Browns Ferry Nuclear Plant and as required by the Nuclear Regulatory Commission.

For the foregoing reasons, the court concludes that defendant's motion for summary judgment is due to be granted. A separate order in accordance with this memorandum will be entered.