**Edward GOGEK, M.D., Plaintiff,**

v.

**BROWN UNIVERSITY; Ronald M. Wintrob, M.D.; Michael R. Liepman, M.D.; Ted D. Nirenberg, Ph.D.; Thomas F. Anders, M.D., Defendants.**

**Civ. A. No. 88–0684–T.**

United States District Court, D. Rhode Island.

Feb. 1, 1990.

As Corrected Feb. 23, 1990.

---

Stephen J. Fortunato, Jr., Providence, R.I., for plaintiff.

Everett C. Sammartino, Asst. U.S. Atty., Dept. of Justice, and Beverly E. Ledbetter, Office of Legal Counsel, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

TORRES, District Judge.

This case is before the Court on the plaintiff's motion to remand and the motion of the United States to substitute itself for defendants Liepman and Nirenberg. These motions require the Court to consider the extent to which Title 28 U.S.C. § 2679 immunizes a federal employee from personal liability for alleged common law torts and the method for determining whether the employee was acting in the scope of employment within the meaning of that section.

## BACKGROUND

Edward Gogek commenced this action in the Rhode Island Superior Court. The complaint alleges that he is a physician who seeks board certification in psychiatry. In 1986 he entered a one year program at Brown University Medical School to complete his residency in psychiatry and thereby qualify to take the test for board certification. As part of his residency, Gogek was assigned to work at the Veterans Administration Hospital in Providence assisting in the treatment of patients having alcohol and other substance abuse problems. While there, he was supervised by defendants Liepman and Nirenberg who the complaint describes as assistant professors at Brown and the individuals in charge of the hospital's alcohol dependency treatment program.

The complaint further alleges that, in June of 1987, Liepman and Nirenberg participated in a decision to place the plaintiff on probation due to perceived deficiencies in his performance. As a result, the plaintiff was unable to complete his residency as scheduled. The plaintiff asserts that the actions of Liepman and Nirenberg were malicious and interfered with what he characterizes as his contract with Brown. Consequently, he seeks compensatory and punitive damages against both defendants.

The United States denies these allegations and contends that any actions taken by Liepman and Nirenberg were committed in the course of their federal employment at the Veterans Administration Hospital. Therefore, it argues that Gogek's exclusive remedy is a claim against the United States pursuant to the Federal Tort Claims Act (the FTCA)[1] and that it should be substituted as a party defendant in place of Liepman and Nirenberg. In support of its position, the government cites 28 U.S.C. § 2679(b)(1) and (d)(2). Those sections were amended in 1988 by Public Law 100–694, which is popularly known as the Federal Employees Liability Reform and Tort Compensation Act. They, now, provide as follows:

(b)(1) The remedy against the United States provided by [the Federal Tort Claims Act] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

. . . . .

(d)(2) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(b)(1) and (d)(2) (1989 Supp.).

In causing this action to be removed from the state court, the United States Attorney did, in fact, file a certification of the type described in § 2679(d)(2). It states that "on the basis of information now available with respect to the incident referred to ... I find that the defendants,

1. Title 28 U.S.C. §§ 1346(b) and 2672.

Michael R. Liepman and Ted D. Nirenberg were acting within the scope of their employment as employees of the United States at the time of such incident."

Gogek asserts that the defendants were not acting as federal employees. Therefore, he contends that he has a right to sue them, personally in a state court tort action. In addition, Gogek argues that the capacity in which the defendants acted is a matter to be decided by the Court rather than by the United States Attorney. Consequently, he has countered with a motion to remand.

## HISTORY AND PURPOSE OF 28 U.S.C. § 2679

The 1988 amendments to the Federal Tort Claims Act represent the most recent effort by Congress to strike an appropriate balance between the right to sue federal officials, personally, for damages caused by their allegedly tortious acts and the public interest in insuring that such officials will not be deterred from vigorously carrying out their duties by fear of law suits exposing them to personal liability. The dilemma was aptly expressed by Judge Learned Hand who wrote:

> It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must in-

deed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative.

*Barr v. Matteo*, 360 U.S. 564, 571–72, 79 S.Ct. 1335, 1339–40, 3 L.Ed.2d 1434 (1959) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949)).

Prior to 1988, Congress apparently was content to let that balance be struck primarily by the courts. In determining whether absolute immunity should be conferred, the courts' initial focus was on whether the act in question was within the scope of the employee's official powers or the outer perimeter of such employee's line of duty. If so, the employee could not be sued individually. *Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959). Subsequent to *Barr*, there were indications that absolute immunity attached only when the conduct was discretionary. The underlying rationale was that fear of personal liability would not deter an employee from taking action that was required by law or by direction of a superior. *See Doe v. McMillan*, 412 U.S. 306, 322–24, 93 S.Ct. 2018, 2029–30, 36 L.Ed.2d 912 (1973). However, as later events demonstrated, this additional requirement escaped Congress' attention.

In any event, until 1988, the Federal Tort Claims Act concerned itself only with an employee's immunity for injuries resulting from the operation of a motor vehicle. It provided that, when a vehicle was driven within the scope of employment, the employee could not be sued individually and the claimant's exclusive remedy was against the government pursuant to the terms of the Act. Of course, the employee remained personally liable for motor vehicle torts committed outside the scope of employment and the employee's liability for other kinds of actions continued to be governed by judicially created principles regarding immunity.

The legislative landscape was significantly altered in 1988 when the Federal Employees Liability Reform and Tort Compensation Act was adopted. The legislative history of that statute indicates that it was prompted by the decision in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). H.R. No. 700, 100th Cong., 2d Sess. 2–4, *reprinted in* 1988 U.S. Code Cong. and Admin.News, 5945–48. In *Westfall*, the Supreme Court made it clear that a federal employee was not cloaked with immunity merely because the employee acted within the outer perimeter of his or her official duties, saying:

> The central purpose of official immunity, promoting effective Government, would not be furthered by shielding an official from state-law tort liability without regard to whether the alleged tortious conduct is discretionary in nature. When an official's conduct is not the product of independent judgment, the threat of liability cannot detrimentally inhibit that conduct. It is only when officials exercise decisionmaking discretion that potential liability may shackle 'the fearless, vigorous, and effective administration of policies of government.' *Barr v. Matteo, supra*, 360 U.S., at 571, 79 S.Ct. at 1339. Because it would not further effective governance, absolute immunity for nondiscretionary functions finds no support in the traditional justification for official immunity.... [A]bsolute immunity from state-law tort actions should be available only when the conduct of federal officials is within the scope of their official duties *and* the conduct is discretionary in nature.

*Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 584, 98 L.Ed.2d 619 (1988) (footnote omitted) (emphasis in original).

*Westfall* virtually invited Congress to legislate standards governing the immunity of federal employees with respect to state tort law actions. *Westfall*, 108 S.Ct. at 585. Congress lost no time in accepting that invitation by broadening the category of activities for which immunity was conferred from the operation of motor vehicles to any "negligent or wrongful act" committed "while acting within the scope of [the employee's] office or employment." [2] Moreover, Congress underscored its intent to make the claimant's remedy against the United States exclusive by requiring that, in such cases, any suit: "shall be deemed an action against the United States under the provisions of [the Federal Tort Claims Act] and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). The primary mechanism for accomplishing substitution (and removal if the action is commenced in a state court) is a certification by the Attorney General or his designee "that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1) and (d)(2).[3]

There can be no question that these changes were designed not only to ensure the immunity of federal employees in such circumstances but also to facilitate summary dismissal of claims against them. Thus, the legislative history of the 1988 Amendment contains the following observations regarding Congress' perception of *Westfall* and the purpose of its legislative response:

> Until the *Westfall* decision, nearly all actions against Federal employees in their personal capacity were unsuccessful because those employees were acting in the course and scope of employment, and therefore were immune from personal liability. After *Westfall*, employees may be held personally liable if they were not exercising governmental discretion, even if they were acting in the scope of employment. Moreover, before *Westfall*, most actions brought against Federal employees in their personal ca-

---

**2.** Under § 2679(b)(2) immunity does not extend to constitutional violations or violations of statutes that authorize suit against an employee individually.

**3.** If the Attorney General refuses to provide such a certification, the employee may petition "the court" for one. If such a petition is filed in the state court, it may be removed by the Attorney General for determination by the district court which must remand the action if it denies the petition. 28 U.S.C. § 2679(d)(3).

pacity were resolved through a summary judgment or dismissal early in the case. This early resolution of the case was possible because the employee could be shown to have been acting within the scope of employment, and therefore absolute immunity precluded recovery. Under *Westfall*, summary judgments and dismissals will no longer be readily available because the additional determination as to whether the employee exercised governmental "discretion" will always be a fact-based determination. Thus, the transaction costs (i.e. litigation costs) and length of time needed to resolve the issue of discretion in these cases will be substantially increased, as will the uncertainty for the individual employee who is sued.

.　　　.　　　.　　　.　　　.

H.R. 4612 would remove the potential personal liability of Federal employees for common law torts committed within the scope of their employment, and would instead provide that the exclusive remedy for such torts is through an action against the United States under the Federal Tort Claims Act (FTCA). The functional effect of H.R. 4612 is to return Federal employees to the status they held prior to the *Westfall* decision. That is, Federal employees will be immune for personal liability for actions taken in the course and scope of their employment.

H.R. No. 700, 100th Cong.2d Sess. 2–4, *reprinted in* 1988 U.S.Code Cong. and Admin.News, 5946–47.

### EFFECT OF 28 U.S.C. § 2680

One troublesome aspect of the immunity conferred by § 2679 is its effect when combined with the provisions of § 2680(h). The latter section enumerates various categories of common law torts for which the United States has expressly refrained from waiving its sovereign immunity under the Federal Tort Claims Act. Among those torts is that of interference with contractual relations which forms the basis of the instant plaintiff's claim against Liepman and Nirenberg. Consequently, a determination that these defendants were acting

within the scope of their federal employment would, under § 2679(b)(1) and (d)(2), preclude suit against them and require substitution of the United States as the party defendant. On the other hand, the United States could, then, assert the defense of sovereign immunity pursuant to § 2680(h). The net result would be to leave Gogek without a remedy against either the individual employees or the United States.

In the past, the prospect of such a seemingly harsh result led some claimants to argue that a federal employee should not be held immune from personal liability unless recovery could be had from the United States. In so doing, they relied on a provision in a previous version of § 2679(d) which stated that:

[s]hould a United States district court determine on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which a remedy by suit within the meaning of subsection (b) of this section is not available against the United States, the case shall be remanded to the State court.

28 U.S.C. § 2679 (1988), amended by 28 U.S.C. 2679 (1989 Supp.). However, the circuit courts considering that contention uniformly rejected it. The holding in *Thomason v. Sanchez*, 539 F.2d 955, 958 (3d Cir.1976) is typical. There, the court said:

The contention, however, is not of first impression. Rather, it has been presented to and rejected by at least three other circuits. [citations omitted] These courts are unanimous in holding "that within the meaning of the Drivers Act the Tort Claims Act remedy is 'not available' *only* where the government driver was not acting within the scope of his employment. When the Tort Claims Act remedy is not available for any other reason, the remand provision does not apply." [citations omitted] The reason for this rule lies in the exclusivity provision of 28 U.S.C. § 2679(b), the basic purpose of which was to immunize individual government drivers from the heavy financial burdens and personal liabilities associated with operating motor vehicles. A contrary interpretation of

the "not available" language in the removal section "would revitalize the common law action. [T]his result would directly contradict the Act's immunizing purpose...."

*Thomason v. Sanchez*, 539 F.2d 955, 958 (3d Cir.1976) (emphasis in original).

Any remaining basis for such an argument was eliminated in 1988 when Congress deleted the aforesaid language from § 2679 and substituted the following provision:

> (4) Upon certification, any action or proceeding subject to [the certification provisions] shall proceed in the same manner as any action against the United States filed pursuant to [the Federal Tort Claims Act] *and shall be subject to the limitations and exceptions applicable to those actions.*

28 U.S.C. § 2679(d)(4) (emphasis added). All doubt as to what Congress intended in making that change is dispelled by the amendment's legislative history. It states:

> The "exclusive remedy" provision of section 5 is intended to substitute the United States as the solely permissible defendant in all common law tort actions against Federal employees who acted in the scope of employment. Therefore, suits against Federal employees are precluded even where the United States has a defense which prevents an actual recovery. Thus, any claim against the government that is precluded by the exceptions set forth in Section 2680 of Title 28, U.S.C. also is precluded against an employee in his or her estate.

H.R. No. 700, 100th Cong.2d Sess. 6, *reprinted in* 1988 U.S.Code Cong. and Admin.News, 5950.

Obviously, Congress concluded that exposing government employees to suit for acts performed in the course of discharging their official duties, simply because the law affords the claimant no remedy against the government, would strip those employees of the very protection that Congress intended to confer by enacting § 2679. In addition, eliminating immunity only for acts of the type enumerated in § 2680 would create a rather anomalous situation.

That section encompasses not only some types of "intentional" torts but also activities related to such fundamental governmental functions as transmission of the mails, collection of taxes, and military operations during times of war. Presumably, Congress declined to waive sovereign immunity for such activities because they were deemed fundamental to the operation of government. Subjecting employees performing those functions to personal liability while immunizing those performing duties of lesser importance is clearly not what Congress had in mind when it enacted either § 2679 or § 2680.

In short, it is Congress' prerogative to establish reasonable limitations on a federal employee's personal liability for acts performed within the scope of employment just as it is Congress' prerogative to choose the circumstances under which the United States will or will not waive its sovereign immunity. Congress has exercised that prerogative by immunizing those employees for alleged common law torts committed in the course of performing their official duties even if the aggrieved party has no remedy against the United States. Therefore, in the instant case, the sole issue presented by the motions before the Court is whether the actions of Liepman and Nirenberg were those of government employees acting within the scope of their offices or employment. If they were, § 2679 bars suit against them and requires that the government's motion to substitute be granted. If they were not, they are subject to being sued personally and the plaintiff's motion to remand should be granted.

### SCOPE OF EMPLOYMENT

■ The statute is somewhat ambiguous regarding the effect of the Attorney General's certification that a federal employee was acting "within the scope of his office or employment." Prior to the 1988 Amendments, the prevailing view was that this was an issue for the courts to decide. Accordingly, the Attorney General's certification was conclusive only for purposes of

initial removal. *See Nasuti v. Scannell,* 792 F.2d 264, 266 n. 3 (1st Cir.1986).

The 1988 Amendments made several changes some of which reinforce that view and some of which can be construed as evincing a congressional intent to make the Attorney General's certification conclusive for all purposes. Thus, language was added to what is now § 2679(d)(2) providing that, with respect to actions commenced in a state court, the Attorney General's certification "shall conclusively establish scope of office or employment *for purposes of removal.*" (emphasis added). The failure to specifically extend such deference to the substitution provisions of subsection (d)(2) or to include a similar provision in subsection (d)(1) which deals with actions commenced in federal court, suggests that Congress did not intend that certification be conclusive for those purposes. Rather, it indicates that the purpose was merely to ensure the government's right to have the scope of employment issue determined in federal court rather than state court.[4] On the other hand, however, the insertion in subsections (d)(1) and (d)(2) of language that, upon certification by the Attorney General, the claim *"shall* be deemed an action against the United States ... and the United States *shall* be substituted as the party defendant" arguably suggests an intent to make such certification conclusive for those purposes also.

In resolving that ambiguity, the Court is guided by the principle that whenever possible a statute should be construed in a manner that preserves its constitutionality. In this case, deeming the United States Attorney's certification conclusive for all purposes would, in effect, vest him with the unilateral and unreviewable authority to adjudicate the plaintiff's claim. By certifying that Liepman and Nirenberg were acting within the scope of their federal employment, the United States Attorney could not only dictate the forum in which

the case is to be litigated but also convert the plaintiff's claim from a common law action against the individual defendants into a suit against the United States under the Federal Tort Claims Act. Having done so, he could then obtain dismissal of the suit by asserting the defense of sovereign immunity pursuant to 28 U.S.C. § 2680. The net result would be that the unilateral act of certification would deprive the plaintiff of a remedy against either the individual defendants or the government without affording the plaintiff any opportunity to contest the basis for such certification. In addition, since the statute prescribes no criteria for making or reviewing such a determination, it would effectively vest the United States Attorney with absolute discretion to perform what is either a legislative or a judicial function. Consequently, such an interpretation would render the statute inconsistent with the requirements of procedural due process and with that aspect of the separation of powers doctrine that forbids delegation of legislative functions without adequate standards.

In this case, the problems inherent in such an interpretation are compounded by the fact that the certification, on its face is far from definitive. As previously noted, it states only that certification is based on "information now available." There is no indication as to the nature, source, reliability, or completeness of that information. According conclusive effect to such a tentative conclusion would be patently irrational. The Court will not impute such an intent to Congress. Therefore the Court concludes that the determination regarding whether Liepman and Nirenberg were acting within the scope of some federal employment is one for the Court to make in accordance with the traditional guarantees of due process.

 In making that determination the Court is not bound by mere allegations of malice or by labels denominating the al-

---

4. As previously mentioned, when suit is brought in state court, § 2679(d)(2) permits the Attorney General to remove it by simply filing the appropriate certification. If such a certification is withheld, the federal employee may petition for one in state court but the Attorney General may

remove that petition to the federal court for determination subject to a possible remand if the federal court determines that the employee was not acting within the scope of his employment. 28 U.S.C. § 2679(d)(3).

leged tort as intentional as opposed to negligent. Moreover, the fact that conduct may constitute an intentional tort of the type enumerated in § 2680(h) does not necessarily negate the possibility that the employee was acting "within the scope of his office or employment." One must bear in mind that the purpose of § 2679 is to protect federal employees from the specter of personal liability that might otherwise inhibit them from vigorously discharging their duties. Accordingly, the relevant inquiry is whether the employee's action was so related to the discharge of his or her official duties that the prospect of personal liability for that action would inhibit the proper performance of those duties.

■ Whether a federal employee was acting within the scope of employment is an issue that must be determined in accordance with the law of the state where the incident occurred. *See Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam); *Nasuti v. Scannell*, 792 F.2d 264, 266 at n. 3 (1st Cir. 1986). However, the dual purpose of the FTCA (i.e. providing redress against the United States for the torts of its employees and protecting those employees from personal liability for acts committed in the performance of their duties) raises some doubt as to the precise principles of state law that apply. In those cases where the claimant seeks recovery from the United States and the issue is whether the government can be held vicariously liable, the state law of *respondeat superior* is clearly controlling. *See, e.g., Merritt v. United States*, 332 F.2d 397, 398 (1st Cir.1964). On the other hand, when suit is brought against the employees, personally, and the issue is whether they are immune, principles governing scope of employment within that specific context may be more germane.

Under Rhode Island law, the doctrine of *respondeat superior* may render an employer liable for the intentional tort of an employee if it was "committed while performing a duty in the course of [the employee's] employment and by express or implied authority from the employer."

*Drake v. Star Market Co., Inc.*, 526 A.2d 517, 519 (R.I.1987) (citation omitted). Implied authority may exist even if the act is illegal or specifically forbidden by the employer when the nature of the employee's duty is such that its performance would reasonably put the employer on notice that such an act may be committed. Thus, an assault committed upon a restaurant patron by a waiter or cashier may be deemed within the scope of employment. *See Drake v. Star Market Co., Inc.*, 526 A.2d at 519; *Bryce v. Jackson Diners Corp.*, 80 R.I. 327, 96 A.2d 637, 640 (1953); *cf. Labossiere v. Sousa*, 87 R.I. 450, 143 A.2d 285, 287 (1958). While there is a dearth of authority defining scope of employment for immunity purposes, there is no reason to believe that its parameters would be significantly different in that context.

In any event, at this juncture, it is not possible to apply these principles to the instant case. The record is devoid of facts sufficient to permit a reasoned determination as to whether Liepman and Nirenberg were acting within the scope of some federal employment. The pleadings and memoranda filed by counsel contain conflicting allegations regarding the capacity in which the defendants acted. For example, they disagree on such fundamental points as whether the defendants were even employed by the United States and whether their evaluation of the plaintiff's performance was being conducted on behalf of the Brown Medical Program or the Veteran's Administration Hospital. Moreover, neither party has presented any acts to support its assertions.

Normally, the failure to present supporting facts would lead the Court to resolve both motions against the government. The motion to substitute would be denied because the government, as the proponent of the motion, has the responsibility of establishing a sufficient basis for granting it. Similarly, as the removing party, the government also bears the burden of proving the allegations contained in its removal petition when those allegations are controverted. *Wilson v. Republic Iron and Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921). However, in this case, the

government obviously has proceeded on the understandable assumption that a mere certification by the United States Attorney was sufficient to carry its burden. While the Court has determined that assumption to be erroneous, under these circumstances, it would be unjust to deprive either party of an opportunity to present any facts supporting their respective allegations.

Therefore, both parties are hereby afforded a period of 60 days in which to submit affidavits and/or other sworn statements of fact bearing on whether the claims against Liepman and Nirenberg arise out of acts committed by them within the scope of federal employment. If those submissions reveal the existence of a genuine dispute regarding facts material to that issue, the Court will conduct an evidentiary hearing to make that determination. In the meantime, the Court will defer ruling on both motions.

IT IS SO ORDERED.