S.J. & W. RANCH, INC.,
Plaintiff–Appellant,

v.

Dexter LEHTINEN and United States
of America, Defendants–Appellees.

No. 89–5990.

United States Court of Appeals,
Eleventh Circuit.

Oct. 10, 1990.

J. David Pobjecky, Winter Haven, Fla.,
Phillip E. Kuhn, Lakeland, Fla., for plain-
tiff-appellant.

Alan Dagen, Asst. U.S. Atty., Ft. Laud-
erdale, Fla., Barbara Herwig, John F. Daly,
Appellate Staff, Civil Div., Washington,
D.C., for the U.S.

Anthony J. O'Donnell, Jr., Miami, Fla.,
for Lehtinen.

Before KRAVITCH and COX, Circuit
Judges, and DYER, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Plaintiff, S.J. & W. Ranch ("Ranch") ap-
peals the dismissal of its complaint for libel
and slander against Dexter Lehtinen, the
United States Attorney for the Southern
District of Florida. The dismissal was
prompted by the substitution of the United
States for Lehtinen as the defendant in the
case pursuant to the Federal Employees
Liability Reform and Tort Compensation
Act ("the Reform Act"), 28 U.S.C. § 2679
(1988), after the Attorney General deter-
mined that Lehtinen's statements were
made within the scope of his duties as
United States Attorney. The substitution
of the United States as the defending party
deprived the court of jurisdiction to enter-
tain the Ranch's suit because the Federal
Tort Claims Act (FTCA), 28 U.S.C.
§ 2680(h), precludes libel and slander
claims against the United States. Because
the district court erroneously held that the

Attorney General's certification decision for purposes of substitution is not subject to judicial review, we reverse and remand for an evidentiary hearing on whether Lehtinen's statements were made within the scope of his employment.

## BACKGROUND

Plaintiff's complaint alleges that on September 15, 1988, Dexter Lehtinen held a press conference during which he announced that the United States Attorney's Office for the Southern District of Florida had initiated civil forfeiture actions against the Ranch and two other properties. In the course of his announcement, Lehtinen allegedly made several defamatory statements concerning the involvement of the Ranch property and its owners in narcotics trafficking. On November 21, 1988, the Ranch filed a defamation suit against Lehtinen in the Circuit Court for Okeechobee County, Florida.

On December 8, 1988, pursuant to the Reform Act, a designate of the Attorney General of the United States certified that Lehtinen was acting within the scope of his employment as United States Attorney at the time of the press conference. *See* 28 U.S.C. § 2679(d). On the basis of this certification, the action was removed to the United States District Court for the Southern District of Florida and the United States was substituted for Lehtinen as the defendant. *See* 28 U.S.C. § 2679(d)(2). The district court held that judicial review of the Attorney General's scope of employment certification was foreclosed by the Reform Act. 717 F.Supp. 824. Therefore, once the United States was substituted as the defendant pursuant to the Reform Act, provisions of the FTCA deprived the court of subject matter jurisdiction to hear plaintiff's defamation claims.

On appeal both the plaintiff *and* the United States contend that the district court erred in holding that the Reform Act precludes judicial review of the scope of employment certification with respect to the substitution of defendants.[1] Lehtinen persists in defending the district court's construction of the statute.[2] The Ranch argues in the alternative that if the Reform Act prohibits judicial review of the certification decision, it violates plaintiff's rights of due process and equal protection. We need not address these constitutional concerns because we agree with the Ranch

1. The United States, which took the opposite view before the district court, explains the shift of its position as follows:

   The district court held, as a matter of law, that the Attorney General's scope certification under the Act is conclusive, and not subject to judicial review. Although the United States itself urged that position in the court below, we have subsequently determined, on the basis of further study of the Act's legislative history, that such an interpretation of the Act is in error.... [T]he statute itself is ambiguous regarding the availability of judicial review of scope determinations, and there are plausible arguments favoring the interpretation adopted by the district court. In our view, however, the balance is tipped by legislative history that unmistakably indicates that the Act's congressional sponsors envisioned the availability of judicial review of this issue. Accordingly, we cannot support the legal theory on which the district court based its ruling. Brief for Appellee at 12–13. The government further added that "[t]his change [was] made after extensive review by Department of Justice officials." *Id.* at 18–19; *see Petrousky v. United States,* 728 F.Supp. 890, 891 (N.D.N.Y.1990) (discussing same change in government position on

certification); *Baggio v. Lombardi,* 726 F.Supp. 922, 924 & n. 1 (E.D.N.Y.1989) (same).

2. In a motion carried with the case, Lehtinen seeks to strike that portion of the government's brief espousing its new position with respect to the appropriate interpretation of the Reform Act. Lehtinen argues that the government is precluded from pursuing a "modification" of the district court's judgment because it failed to file a cross-appeal. This motion borders on the frivolous. The government is not seeking to modify the relief it received below, rather it is defending the district court's judgment on different, and in its view, more tenable grounds. *See City of Safety Harbor v. Birchfield,* 529 F.2d 1251, 1254 n. 4 (5th Cir.1976).[*] The government's salutary admission of error, far from warranting condemnation, should be emulated by all litigants who discover that a position they have advocated lacks merit. Lehtinen's motion to strike is denied in its entirety. His motion to adopt argument II of the brief of the United States is granted.

   [*] The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

and the United States that the district court erred in its construction of the statute.

## DISCUSSION

The Reform Act was passed in response to the Supreme Court's decision in *Westfall v. Erwin,* 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), which reduced the immunity previously available to federal employees for common law torts committed within the scope of their employment. *Nasuti v. Scannell,* 906 F.2d 802 (1st Cir. 1990); *Arbour v. Jenkins,* 903 F.2d 416, 420 (6th Cir.1990); *Springer v. Bryant,* 897 F.2d 1085, 1086–87 (11th Cir.1990); *Sowell v. American Cyanamid Co.,* 888 F.2d 802, 805 (11th Cir.1989). Congress described the purpose of the Act as being to protect federal employees from personal liability for common law torts committed within the scope of their employment, while also providing persons injured by the common law torts of federal employees with an appropriate remedy against the United States. Pub.L. No. 100–694 § 2(b); *Nasuti,* 906 F.2d at 804; *see Springer,* 897 F.2d at 1086. The Reform Act accomplishes this purpose by substituting the United States for the federal employee as the defendant in a suit if the employee's actions were within the scope of his employment. *Nasuti,* 906 F.2d at 804; *Gogek v. Brown Univ.,* 729 F.Supp. 926, 930 (D.R.I.1990). The crux of the issue before us on appeal is whether the Attorney General's Office or the federal district court is the forum entrusted with determining whether the challenged conduct occurred within the scope of employment for purposes of substituting the United States as the defendant.[3]

■ The section of the Reform Act that is the basis of the parties' dispute provides that:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed ... to the [appropriate] district court of the United States.... Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. The certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(d)(2). It is significant that the statute, on its face, does not explicitly preclude judicial review of scope certification with respect to the substitution of the United States. To the contrary, the statute's express provision that certification "shall conclusively establish scope of office or employment *for purposes of removal,*" suggests that Congress intended to make scope certification unreviewable only with respect to removal. *See Nasuti,* 906 F.2d at 809; *Gogek,* 729 F.Supp. at 933; *Martin v. Merriday,* 706 F.Supp. 42, 45 (N.D.Ga.1989). This interpretation is consistent with a congressional intent to ensure that federal rather than state courts review the Attorney General's scope certification. *Martin,* 706 F.Supp. at 45; *see Nasuti,* 906 F.2d at 813 & n. 16; *Gogek,* 729 F.Supp. at 933. Additionally, a provision in another section of the Reform Act allowing federal employees to seek judicial review of denials of certification indicates that the Act contemplated federal review of the Attorney General's certifications. *See Martin,* 706 F.Supp. at 45; 28 U.S.C. § 2679(d)(3). Although the plain language of the statute militates in favor of the interpretation advanced by the Ranch and the United States, the section is sufficiently ambiguous[4] that a consideration of the

---

**3.** This question was expressly left open by the Eleventh Circuit in *Springer,* 897 F.2d at 1087 n. 3.

**4.** *Gogek,* 729 F.Supp. at 933. *Cf. Aviles v. Lutz,* 887 F.2d 1046, 1049 (10th Cir.1989) (construing statutory language to preclude judicial review of certification); *Mitchell v. Carlson,* 896 F.2d 128, 136 (5th Cir.1990) (suggesting that statute precludes judicial review of certification).

statute's legislative history is helpful. *See Arbour,* 903 F.2d at 421.

Our review of this history persuades us that the district court's interpretation was in error. During the hearings before the House Subcommittee on Administrative Law and Governmental Relations of the Committee on the Judiciary, Subcommittee Chair Frank, a sponsor of the bill, expressed his understanding that under section 2679(d)(2) a "plaintiff can still contest the certification...." *Legislation to Amend the Federal Tort Claims Act: Hearing on H.R. 4358, H.R. 3872, and H.R. 3083 Before the Subcomm. on Administrative Law and Governmental Relations of the House Comm. on the Judiciary,* 100th Cong., 2d Sess. 128 (1988) [hereinafter *Hearings*]; *see Arbour,* 903 F.2d at 421. Representative Frank elaborated:

> I mean that [this bill] is not going to void the [certification] litigation. It seems to me the certification is a weapon against the employee, not against the plaintiff, because *the plaintiff would still have the right to contest the certification if they thought the Attorney General were certifying without justification.*

*Hearings, supra,* at 128 (emphasis added). This understanding of the bill was reiterated in a colloquy with Lois Williams, Director of Litigation at the National Treasury Employees Union.

> Frank: [E]ssentially the judge is deciding the case. One of the issues for the judge is going to be to decide [certification] ... because you might have a third route. It is conceivable—I cannot think of too many cases—where the plaintiff might not want the Government in there.
> Williams: That is right.
> Frank: So the plaintiff might object to the argument and the Government might certify. But that would not be binding on the plaintiff. The plaintiff would, I assume, have the right to go into court and say, baloney, it was not within the scope of employment, either because of some immunity issue or because you really hated that defendant and you wanted to get them.

> Williams: Yes. In fact, that is the way it frequently has arisen in the past.

*Id.* at 197. Representative Frank's understanding that the certification issue would be subject to judicial review was shared not only by Williams, but also by a representative of the Justice Department, Deputy Assistant Attorney General Robert Willmore, as is evidenced by the following exchange:

> Frank: Well, but the plaintiff can still contest the certification, could he not?
> Willmore: Yes.

*Id.* at 128; *see Arbour,* 903 F.2d at 421. Later during the hearing, Willmore reiterated: "Chairman Frank is correct that a plaintiff can challenge that certification. So that would be reviewable by a court at some point, probably by a Federal District Court." *Hearings, supra,* at 133; *Arbour,* 903 F.2d at 421. We agree. The legislative history of the certification provision of the Reform Act coupled with the language of the statute itself persuades us that the Attorney General's scope certification is pertinent and dispositive only for removal purposes.

Our interpretation of the statute is supported by several additional considerations. First, separation of powers concerns generally bar executive branch interference in the judicial branch's determination of its subject matter jurisdiction. *See Nasuti,* 906 F.2d at 813 (potential separation of powers problem if statute read "to leave the Attorney General as the sole judge of an issue determinative of the jurisdiction of the federal court"); *Gogek,* 729 F.Supp. at 933 (potential separation of powers problem if statute read to "vest the United States Attorney with absolute discretion to perform what is either a legislative or a judicial function"). The substitution of the United States for the federal employee in this, and other similar cases, will have the direct and immediate effect of depriving the federal court of subject matter jurisdiction over the action because the FTCA does not waive sovereign immunity for such employee conduct occurring within the scope of employment. *Gogek,* 729 F.Supp. at 933. As the First Circuit cogently noted, "it is hard to imagine Congress empower-

ing an executive officer, the Attorney General of the United States, to displace the federal court as the final determiner of the scope of employment question, thus forcing a federal court to forego determination of its own jurisdiction, and preventing the plaintiff, by executive fiat, from pursuing a possibly legitimate claim in state court." *Nasuti*, 906 F.2d at 812; *see Gogek*, 729 F.Supp. at 933.

Moreover, the statutory interpretation urged by defendant Lehtinen is particularly suspect because it leaves the determination of a dispositive issue in FTCA cases to an interested party. Under 28 U.S.C. § 2679(c), the Attorney General is required to "defend any civil action or proceeding brought in any court against any employee of the Government ... for any such damage or injury." *Id.* We do not believe Congress intended to entrust the party responsible for providing the federal employee's defense with the power to make a scope determination that will have the result of dismissing the plaintiff's suit for lack of jurisdiction. *Nasuti*, 906 F.2d at 812–13; *Petrousky*, 728 F.Supp. at 894; *see Gogek*, 729 F.Supp. at 933. Our concern with the impartiality of the scope determination is especially acute in a situation like the one in this case where the authority to make scope certifications has been delegated to the federal employee defendant or his colleagues.[5]

We are also cognizant of the due process implications inherent in treating the Attorney General's scope certification as dispositive. We share the First Circuit's observation that nothing in the regulations governing scope certifications requires the Attorney General "to conduct a neutral proceeding, open to all parties, before taking a final position on the scope question—the least one might have expected had Congress intended the Attorney General to substitute for the federal courts as the

final arbiter of a controversy affecting both the parties' rights and liabilities and the court's jurisdiction." *Nasuti*, 906 F.2d at 812–13. Defendant Lehtinen's construction of the statute raises due process concerns because such a statutory scheme would permit the Attorney General to arbitrarily deprive a plaintiff of a cause of action without a meaningful opportunity to be heard and other procedural safeguards. *See Nasuti*, 906 F.2d at 813; *Gogek*, 729 F.Supp. at 933; *Petrousky*, 728 F.Supp. at 892–95; *see also Martin*, 706 F.Supp. at 44 (expressing concern over lack of standards by which Attorney General is to make scope certification).

■ Finally, whether an employee's actions are within the scope of his employment for purposes of the Reform Act is an issue governed by the law of the state where the incident occurred. *Nasuti*, 906 F.2d at 805 n. 3; *Arbour*, 903 F.2d at 421–22; 28 U.S.C. § 1346(b); *see Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). Because this determination involves a question of law as well as fact, it is reasonable to assume that Congress entrusted the authoritative disposition of this question to the judicial rather than the executive branch. *See Petrousky*, 728 F.Supp. at 892 (legislative history of the Reform Act reveals Congressional approval of scope determinations made by courts).

■ Based upon our construction of the Reform Act and the above considerations, we conclude that once in federal court a plaintiff is entitled to litigate the question of whether the employee was acting within the scope of his employment when the challenged conduct occurred. *Accord Nasuti*, 906 F.2d at 813; *Arbour*, 903 F.2d at 421; *Gogek*, 729 F.Supp. at 933; *Petrousky*, 728 F.Supp. at 891; *Baggio*, 726 F.Supp. at 925; *Martin*, 706 F.Supp. at 45; *see also Sowell*, 888 F.2d at 804–05 (reviewing and uphold-

---

**5.** As a United States Attorney, Lehtinen was authorized to make scope certifications. *See* 28 C.F.R. § 15.3(a) (1989); *Nasuti*, 906 F.2d at 804 n. 1; *Arbour*, 903 F.2d at 421. In this case, another Justice Department official, Torts Branch Director, John Farley III, provided the scope certification. *See* 28 C.F.R. § 15.3(b)4

(authorizing Assistant Attorney General to redelegate certification authority to subordinate division officials). *Cf. Martin*, 706 F.Supp. at 44 n. 1 (noting that the Assistant Attorney General has delegated certification authority to any Director of the Torts Branch).

ing scope determination in light of trial testimony); *Robinson v. Egnor*, 699 F.Supp. 1207, 1215 & n. 14 (E.D.Va.1988) (conducting scope determination).

A remaining question is the degree of deference, if any, the district court should accord the Attorney General's scope certification for purposes of determining the propriety of substituting the United States for the employee as the defendant in the lawsuit. The Justice Department, relying on the mandatory language of the statute, argues that the Attorney General's certification shifts the burden on the plaintiff to establish that the defendant acted outside the scope of his employment. Additionally, the government urges that the Attorney General's determination is entitled to "substantial deference" from the federal courts. Brief of Appellee at 22. In support of this proposition, the government makes the conclusory argument that "underlying that ultimate issue [of scope] are determinations on matters that are uniquely within the purview of the Executive Branch—i.e., defining the activities that are within the employer's business and ascertaining the range of responsibilities entrusted to the individual employee." *Id.* Although we are persuaded by the statutory language that the plaintiff has the burden of proving that the employee's conduct was not encompassed by the scope of his employment, we agree with the majority of federal courts that the district court determines scope de novo.

The government's contention that the plaintiff bears the burden of proving that the employee acted outside the scope of his employment is well supported by the mandatory nature of the Reform Act's terms. The statute provides that "[u]pon certification ... the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2). Although, as discussed above, this scope certification is not dispositive for purposes of substitution, it indicates that the United States is substituted as an automatic consequence of the Attorney General's certification. Unless the plaintiff challenges the scope determination, the court is entitled to treat the Attorney General's certification as prima facie evidence that the employee conduct at issue occurred within the scope of the employment. The burden of altering the status quo by proving that the employee acted outside the scope of employment is, therefore, on the plaintiff.

■ Although the plaintiff bears the burden of establishing that the challenged conduct exceeded the scope of employment, the district court's adjudication of the matter is de novo. *See Nasuti*, 906 F.2d at 808 (district court must make "express determination of its own that defendant, when he allegedly injured plaintiff, was acting beyond the scope of his federal employment"); *Petrousky*, 728 F.Supp. at 895 (district court review of certification is de novo); *see also Sowell*, 888 F.2d at 804–05 (upholding trial court and Justice Department determinations that defendant acted within scope of employment because they were "obviously correct in light of the testimony at trial").

This conclusion is dictated largely by the same reasoning that persuaded us that the Attorney General's scope certification is only relevant for removal purposes. As we noted above, the removal and substitution determinations are distinct and independent under our interpretation of the statute. It would, therefore, be anomalous to restrict the court's adjudication of the substitution issue by requiring deference to a determination made in the entirely separate removal context. The Reform Act's policy of ensuring federal review of suits involving federal employees is not at all furthered by requiring a federal court to defer to the Attorney General's scope certification in determining the substitution issue. The conclusion that the Attorney General's scope certification does not warrant judicial deference is further supported by the fact that the Attorney General does not possess a particular expertise in determining whether a federal employee's actions occurred in the scope of his employment *within the meaning of the appropriate state law*. Finally, our concern with the highly discretionary and potentially biased nature of the Attorney General's certification determination reinforces our view that such a scope certification should not be entitled to deference in the substitution context.

## CONCLUSION

The district court erred in finding the Attorney General's scope certification non-reviewable for purposes of substitution. On remand the district court should conduct a de novo hearing on whether defendant Lehtinen's conduct occurred within the scope of his employment and permit the plaintiff full discovery [6] on the scope question. If the district court agrees with the Attorney General's determination following its independent review of the issue, then the United States should be substituted for defendant Lehtinen and the action dismissed. *Nasuti,* 906 F.2d at 814; *Baggio,* 726 F.Supp. at 925. Should the district court reach a contrary conclusion, it must remand the case back to the state court for trial. *Nasuti,* 906 F.2d at 814 & n. 17; *Baggio,* 726 F.Supp. at 925; *see Petrousky,* 728 F.Supp. at 899.

REVERSED and REMANDED.

---

**6.** *See Arbour,* 903 F.2d at 421 (reversing district court's denial of plaintiff's discovery requests on scope of employment issue).