**Joseph M. NADLER, Plaintiff–Appellant,**

v.

**Frederick (Fritz) MANN,
Defendant–Appellee,**

**United States of America, Defendant.**

No. 90–5383.

United States Court of Appeals,
Eleventh Circuit.

Jan. 17, 1992.

Alfred Aronovitz, Miami, Fla., for plaintiff-appellant.

Gary J. Takacs, Whitney L. Schmidt, Asst. U.S. Atty., Tampa, Fla., for defendant-appellee.

Before TJOFLAT, Chief Judge, EDMONDSON, Circuit Judge, and DYER, Senior Circuit Judge.

TJOFLAT, Chief Judge:

Joseph M. Nadler appeals the dismissal of his civil action for damages arising from the alleged slander of Nadler by appellee Frederick Mann. The district court found that Mann's allegedly slanderous conduct was within the scope of his employment as a federal employee and, therefore, that Mann was immune from liability pursuant to the Federal Employees Liability Reform and Tort Compensation Act (Liability Reform Act or Act), 28 U.S.C. § 2679 (1988). Nadler challenges this finding and argues that, in any event, the Liability Reform Act does not immunize federal employees from suit when the plaintiff is precluded by an exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–80 (1988), from maintaining an action against the United States. We hold that the Liability Reform Act immunizes federal employees from liability even when an exception to the FTCA precludes a suit against the United States. Further, we find that all but one of Mann's allegedly slanderous actions were within the scope of his employment; therefore, we affirm in part and reverse in part the district court's order dismissing Nadler's cause of action and remand the case to the district court for further proceedings consistent with this opinion.

### I.

In the summer and fall of 1986, Nadler was a judge on the Dade County (Florida) Circuit Court and was seeking re-election to that court. At the same time, Mann was an Assistant United States Attorney (AUSA) in the Miami Division of the Southern District of Florida. Also, Mann was one of two candidates opposing Nadler for a judicial seat on the Dade County Circuit Court.

For a period of time Mann participated in campaign activities only before or after work or during his lunch hour. Approximately three weeks prior to the primary election scheduled for September 2, 1986, however, Mann took annual leave, i.e., paid vacation, from his position as an AUSA. Mann, nevertheless, remained in contact with his office during his vacation in order to keep abreast of developments and to relay information relating to pending cases.

On or about August 28, 1986, while on annual leave from his position as an AUSA, Mann received a telephone call at his home from a public official[1] who informed Mann that he had reason to believe that Nadler had accepted a bribe that had been offered to influence Nadler's decision in a case then pending before him. Mann told the public official that the appropriate way to handle this allegation of bribery was through the Federal Bureau of Investigation (FBI). The next day Mann arranged a meeting between the public official and a special agent of the FBI. Mann had no further participation in the investigation of the public official's allegation, nor was he kept appraised of its status, except on one occasion when he was a party to a telephone conversation between the AUSA who headed the Public Corruption Unit of the United States Attorney's Office for the Southern District of Florida in Miami and a representative of the Public Integrity Section of the Department of Justice in Washington, D.C.

On September 2, 1986, Nadler finished first in the primary election for the judicial seat. Mann finished third. A run-off election was scheduled for November 4, 1986 between Nadler and the candidate who had placed second in the primary election.

Approximately one week prior to the run-off election, the *Miami Herald* reported that Nadler was the subject of a criminal investigation being conducted by the United States Government stemming from an allegation that Nadler had accepted a bribe in connection with a case that had come before him as a judge on the Dade County Circuit Court. On November 4, 1986, Nadler won re-election to the Dade County Circuit Court.

On October 26, 1988, Nadler commenced this suit in the Dade County Circuit Court. Nadler alleges that Mann slandered and defamed him by initiating the investigation into his behavior and then by leaking the story of the investigation to the press. Nadler seeks $5,000,000 in compensatory damages and an unspecified amount in punitive damages.

Mann removed this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1442(a)(1) (1988)[2] and Nadler moved to remand. In response to Nadler's motion to remand, the United States certified that Mann was acting within the scope of his employment and moved for substitution of the United States as the sole defendant pursuant to the Liability Reform Act. The Act provides that an action against the United States is the sole remedy for those injured by the negligent or wrongful acts committed by a federal employee while the employee is acting within the scope of his office or employment.[3] The Act further

---

1. The public official's anonymity has been preserved throughout this case. Measures taken to preserve the public official's anonymity along with other protective measures taken by the Federal Bureau of Investigation in the investigation of the bribery allegation led Nadler to file a Freedom of Information Act suit in the United States District Court for the Southern District of Florida at Miami. An appeal pertaining to that suit is currently pending before this court in *Nadler v. United States Department of Justice and Federal Bureau of Investigation*, No. 90–5420.

2. The federal officer removal statute, 28 U.S.C. § 1442, provides in pertinent part:

    (a) A civil action ... commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

    (1) Any officer of the United States ... or person acting under him, for any act under color of such office....

    28 U.S.C. § 1442(a)(1).

3. The Act provides in pertinent part:

    The remedy against the United States provided by [the FTCA] for injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

    28 U.S.C. § 2679(b)(1).

provides that, upon certification by the Attorney General that the federal employee's actions were within the scope of his employment, the United States shall be substituted for the federal employee as the defendant in the suit.[4]

The district court concluded that the Attorney General's certification was appropriate and within his discretion. *Nadler v. Mann,* 731 F.Supp. 493, 496–97 (S.D.Fla. 1990).[5] Thus, the district court held that Nadler could not maintain a direct action against Mann and that the United States must be substituted as the defendant. *Id.* at 498. Finally, the district court dismissed Nadler's action because the United States is immune from liability for defamation under the FTCA, 28 U.S.C. § 2680(h) (1988).[6] *Id.* at 498–99.

## II.

Nadler presents two arguments on appeal. First, Nadler argues that because the United States is immune from liability for defamation claims under the FTCA, the Liability Reform Act does not immunize Mann from liability. Second, Nadler argues that the district court erred in holding

that Mann was acting within the scope of his employment when he contacted the FBI regarding the allegation that Nadler had accepted a bribe and when he allegedly leaked the story of the FBI's investigation to a reporter at the *Miami Herald.*

### A.

■ We quickly dispose of Nadler's first argument. Nadler argues that Congress did not intend to leave a person injured by the negligent act of a federal employee without a remedy against either the offending federal employee or the United States. His argument is grounded in his interpretation of the following language from the Liability Reform Act: "The *remedy* against the United States provided by ... [the FTCA] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive...." 28 U.S.C. § 2679(b)(1) (emphasis added). Nadler argues that absent any remedy, there is no reference to exclusion and he points out that the FTCA does not provide a reme-

---

**4.** Section 6 of the Act provides:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed ... to the [appropriate] district court of the United States.... Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(d)(2).

**5.** At the time the district court issued its order in this case, the law of the Eleventh Circuit was unsettled as to whether the Attorney General's certification decision is subject to judicial review, and if so, what degree of deference a reviewing court should afford it. After reviewing the language and structure of the Reform Act, its legislative history, and the case law from outside this circuit interpreting the Reform Act, the district court concluded that the Attorney General's certification decision is subject to judi-

cial review. *Nadler v. Mann,* 731 F.Supp. 493, 496–97 (S.D.Fla.1990). The district court did not explicitly state in its order what standard of review it employed in reviewing the Attorney General's certification. Our study of the district court's order and the record in this case, however, leads us to conclude that the district court reviewed the Attorney General's certification de novo.

After the district court issued its order, this court held, in an unrelated case, that the Attorney General's certification that the federal employee defendant was acting within the scope of his employment at the time of the incident out of which the claim arose is subject to de novo review by the district court. *S.J. & W. Ranch, Inc. v. Lehtinen,* 913 F.2d 1538, 1540–42 & 1543 (11th Cir.1990), *amended,* 924 F.2d 1555 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 62 (1991). The plaintiff bears the burden of establishing that the federal employee's challenged conduct exceeded the scope of his employment. *Id.* at 1543.

**6.** Section 2680 provides in pertinent part:

The provisions of [the FTCA] shall not apply to—(h) Any claim arising out of ... libel [or] slander....

28 U.S.C. § 2680(h).

dy against the United States for slander. *See* 28 U.S.C. § 2680(h). Nadler further suggests that, because there is no remedy under the FTCA against the United States for defamation, the Liability Reform Act cannot immunize the federal employee he accuses of slander.

Nadler finds support for his interpretation in this court's decision in *Newman v. Soballe,* 871 F.2d 969 (11th Cir.1989). In *Newman,* this court concluded that the Liability Reform Act does not immunize a federal employee from liability when the FTCA precludes recovery against the government. *Id.* at 971. *Newman,* however, is no longer good law. After this court heard oral argument in the present case, the Supreme Court, in an unrelated case, addressed the very issue that this court decided in *Newman.* The Court held that the Liability Reform Act immunizes government employees from suit even when an exception to the FTCA precludes recovery against the United States. *United States v. Smith,* —— U.S. ——, ——, 111 S.Ct. 1180, 1183, 113 L.Ed.2d 134 (1991). The Supreme Court's holding in *Smith* controls our decision in this case. We reject, therefore, Nadler's argument that, because the FTCA precludes recovery against the government for slander, the Liability Reform Act does not apply to immunize Mann in this case.

### B.

■ We turn now to Nadler's attack on the district court's determination that Mann's allegedly slanderous conduct fell within his scope of employment. A determination of whether an employee's actions are within the scope of his employment involves a question of law as well as fact. *S.J. & W. Ranch, Inc. v. Lehtinen,* 913 F.2d 1538, 1542 (11th Cir.1990), *amended,* 924 F.2d 1555 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991). We therefore review the district court's conclusion that Mann acted within the scope of his employment de novo. *See International Ins. Co. v. Johns,* 874 F.2d 1447, 1453 (11th Cir.1989) (mixed questions of law and fact are subject to plenary re-

view); *see also Meridian Int'l Logistics, Inc. v. United States,* 939 F.2d 740, 745 (9th Cir.1991) (whether a Government employee was acting within the scope of his employment is a mixed question of law and fact which the court reviews de novo). In contrast, we adopt the factual findings underlying the district court's conclusion unless they are clearly erroneous. *See International Ins. Co.,* 874 F.2d at 1453.

■ Whether a defendant employee's conduct falls within the scope of his employment for the purposes of the Liability Reform Act is governed by the law of the state where the conduct occurred. *See S.J. & W. Ranch,* 913 F.2d at 1542. In this case, we must look to Florida law because Mann's alleged conduct occurred in Florida. Under Florida law, an employee acts within the scope of his employment "if his act is of the kind he is employed to perform, it occurs substantially within the time and space limits of employment and it is activated at least in part by a purpose to serve the master." *Kane Furniture Corp. v. Miranda,* 506 So.2d 1061, 1067 (Fla.Dist.Ct. App.1987). Stated another way, the issue is "whether the employee was doing what his employment contemplated." *Morrison Motor Co. v. Manheim Servs. Corp.,* 346 So.2d 102, 104 (Fla.Dist.Ct.App.1977), *cert. denied,* 354 So.2d 983 (Fla.1978).

■ Mann testified at his deposition that he believed it was a part of his job and duty as an AUSA to make an alleged violation of federal law known to whatever agency would be responsible for investigation of the matter. We wholeheartedly agree. A United States Attorney, appointed by the President and confirmed by the Senate, is the chief federal law enforcement official for the judicial district he serves and is responsible for the prosecution of all offenses against the United States within his district. 28 U.S.C. §§ 541, 547 (1988). An AUSA is appointed by the Attorney General to aid the United States Attorney in carrying out his duties. *See* 28 U.S.C. § 542 (1988).

■ We agree with the district court that Mann acted within the scope of his

employment when he arranged a meeting between a representative of the FBI—a federal law enforcement agency—and the public official who alleged that Nadler had accepted a bribe in violation of federal law. Similarly, the district court correctly determined that Mann acted within the scope of his employment when he spoke about the public official's allegation with a fellow AUSA and with a representative of the Department of Justice's Public Integrity Section.[7]

■ This does not end our inquiry, however, since Nadler charges also that Mann defamed and slandered him by leaking to the *Miami Herald* the story of the FBI's investigation into the public official's allegation regarding Nadler. An AUSA does not act within the scope of his employment when he leaks information regarding a criminal investigation to the news media.[8] An AUSA who leaks information to the press simply is not "doing what his employment contemplated." Thus, we hold that the district court erred in determining that Mann acted within the scope of his employment insofar as its determination relates to Mann's alleged leak to the *Miami Herald*.

### III.

We affirm the district court's judgment except as it pertains to Nadler's allegation that Mann slandered him by leaking information regarding the FBI's investigation to the *Miami Herald*. The district court's order granting the defendants' motion to

substitute the United States as defendant and dismissing Nadler's claim, insofar as it relates to the leak to the *Miami Herald*, is reversed. We remand this case to the district court for further proceedings not inconsistent with this opinion.[9]

AFFIRMED in part, REVERSED in part, and REMANDED.

---

7. Moreover, the fact that Mann was on paid vacation from his job when he undertook these allegedly slanderous actions is, in the circumstances of this case, insignificant.

8. Indeed, the attorney for Mann and the United States conceded at oral argument before this court that it is not part of an AUSA's job to leak information to the press.

9. Nadler's entire action was properly removed to the federal district court. *See National Audubon Soc. v. Department of Water & Power*, 496 F.Supp. 499, 509 (E.D.Cal.1980) ("It is well settled that if one claim cognizable under Section 1442 is present, the entire action is removed, regardless of the relationship between the Section 1442 claim and the non-removable claims."). The district court retains jurisdiction

over Nadler's remaining claim against Mann by virtue of its pendent jurisdiction. *See Swett v. Schenk*, 792 F.2d 1447, 1450 (9th Cir.1986) (federal court has the power to hear claims that would not be independently removable, even after the basis for removal jurisdiction has been removed from the case). We note, however, "that existence of power to adjudicate a controversy is not always coextensive with the propriety of its exercise." *Murphy v. Kodz*, 351 F.2d 163, 167 (9th Cir.1965). What remains to be adjudicated in this case is a state law claim that touches on no federal issue. Further, it seems to us that judicial economy would not be compromised if the district court remanded the case to state court. The issue of whether the district court should continue to exercise its jurisdiction over Nadler's remaining claim is, however, left to its discretion.